Scileppi, J.
Petitioners purchased an 11-acre tract of land in the Town of Hempstead for the purpose of constructing a subdivision of one-family dwellings. This land lies wholly below the mean high water mark and, unless said property is filled and thereby elevated, petitioners will not be able to build on it. The petitioners proposed to fill and elevate their land with sand dredged from a nearby underwater area owned by the appellants, the Town Board of the Town of Hempstead.
Dredging in the Town of Hempstead is allowed only if a permit is issued pursuant to Local Law No. 4 of 1964 of the Town of Hempstead, an ordinance governing the granting of permits. This law sets out detailed standards by which the issuance or denial of permits are to be governed. The sections of the statute pertinent to this appeal read as follows:
‘1 Section 6. The town board may adopt a resolution directing the issuance of a permit hereunder for the removal of material from town land if it shall find that the material proposed to be removed is not required for any town purpose, that the proposed *195 removal will not violate the provisions of Section 15 hereof and that the public interest will not be otherwise prejudiced thereby * # *.
“ Section 7. If the town board shall find that a proposed removal of town land will benefit the town substantially as a necessary improvement of any waterway or waterways affected thereby, the resolution directing the issuance of a permit may waive all or any part of the payments provided in Sections 8 and 12 hereof ” (emphasis added).
Prior to submitting their application for a dredging permit, the petitioners consulted with the Dredging Engineer for the town in order to determine which borrow area (the underwater area from which material would be removed and pumped to petitioners 7 land) could be utilized. The Town Engineer selected a borrow area and petitioners’ engineers proceeded to draw their dredge plans in accordance with that selection. On May 12, 1964, the petitioners filed an application for a permit, accompanied by the necessary maps and engineering proposals for the borrow area.
On May 15,1964, the appellants and petitioners entered into an agreement whereby the petitioners dedicated to the town approximately 56,000 square feet of land located on the eastern side of the tract along Cedar Swamp Creek. Petitioners contend that they were informed by the town that the intended fill operation on their land threatened to interfere with the proposed widening of the creek and that the town desired that the petitioners dedicate the above-mentioned portion of their property to insure that the creek could be widened and that the boundary line between the petitioners’ property and the waterway be straightened. They also contend that the Town Supervisor assured them that, if the land necessary to insure the width of the channel was dedicated to the town, a dredging permit would be issued to allow the petitioners to fill and thereby make use of the remaining portion of their land. An examination of the agreement, however, indicates that it was entered into not to insure the width of Cedar Swamp Creek but to settle a boundary dispute which had arisen between the appellants and the petitioners. Furthermore, while the boundary agreement recites only nominal consideration for the dedication, a letter of July 23,1964 from a Town Supervisor to the Executive Secretary of *196 the Nassau. County Planning Commission states that the consideration for the dedication was a waiver of the requirement that the petitioners dedicate 3% of their tract for park purposes if and when they constructed their subdivision. In short, there is no evidence in the record that the land was dedicated to the town in consideration of the town’s promise to issue a dredging permit.
The petitioners received a letter on June 9, 1964 from the Department of Conservation and Waterways of the Town of Hempstead informing them that a study would have to be made to determine if their proposed dredging would be harmful to the fish and wildlife of the area. The letter also asked the petitioners to submit further engineering information and stated that a permit would not be issued until the additional information was submitted and the wildlife .study was completed.
In February, 1965, the State of New York Conservation Department wrote to the town expressing the “ hope * * * that no future dredging will be done in this area to disturb any more of the natural bay bottom ’ ’ since the area could once again become productive for the harvesting of shellfish.
By a resolution of September 14, 1965, the town denied petitioners’ application for a dredging permit on the ground that the proposed dredging would not benefit the town and on the ground that the dredging would adversely affect the marine resources of the area.
Petitioners instituted an article 78 proceeding on December 1, 1965 to annul the Town Board’s resolution and to require the board to issue a permit. The petition was denied on the merits on April 13, 1966. The Appellate Division with one Justice dissenting (Hopkins, J.) reversed on the law and the facts. The Appellate Division held that the board’s first reason for denying the permit would justify charging a royalty but not denying a permit. As for the second reason, the Appellate Division was of the opinion that the town had not adequately substantiated it. Justice Hopkins was of the opinion that the determination was not arbitrary; that the conservation of waterways within the town was a legitimate concern of municipal regulation (Town Law, § 81, subd. 1, par. [g]) particularly where the dredging proposed was designed to remove material from town-owned land and apply it to petitioners’ land (Town Law, § 64, subd. *197 [3]); that the conservation and encouragement of the breeding of shellfish were legitimate concerns of the town (Town Law, § 130, subd. 18); that petitioners did not acquire any vested interest by contract which required issuance of a permit, nor did negotiations between petitioners and respondents disclose any equitable consideration in favor of the petitioners which would compel intervention; that the record amply supported the conclusion that there would be an adverse effect upon the marine resources of the area.
The Town Board’s determination should not be disturbed by the courts unless it is arbitrary, unreasonable or capricious (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 24, and cases cited therein). While we agree with the Appellate Division that the Town Board could not refuse to issue a dredging permit on the ground that it would not benefit the town, we disagree with the Appellate Division’s conclusion that the town could not refuse to deny a permit on the ground that the dredging would be harmful to the marine resources of the area. Section 6 of Local Law No. 4 states that the board may issue a permit provided that the public interest will not be prejudiced thereby. Therefore, the town had the right to refuse to issue a permit at any time that it felt it was not in the public interest to do so. The tone of the Department of Conservation’s letter, wherein they expressed the hope that no further dredging permits would be issued, indicated that further dredging would be inimical to fish and wildlife of the area. Conservation is surely a matter of public interest. In light of this letter the town could reasonably decide that further dredging would be prejudicial to the public interest and, therefore, it was reasonable for them to deny the permit.
The petitioners argued and the Appellate Division agreed that they were equitably entitled to a permit. They argue that they have complied with all of the engineering criteria set out in the ordinance and that they have spent thousands of dollars in doing so; that the town delayed denying the permit for many months without once indicating that the permit would be denied; that they dedicated part of their tract to the town on the assurance of a Town Supervisor that if they did so a permit would be issued.
*198 We find that these contentions are meritless. First of all, there is no evidence in the record that a Town Supervisor promised that a permit would he issued if petitioners conveyed part of their tract to the town. On the contrary, and as heretofore stated, the boundary line agreement and the afore-mentioned letter of July 23, 1964 indicate that the land was conveyed to settle a boundary line dispute. Secondly, the petitioners are in error in stating that they had no indication that their permit might be denied. The afore-mentioned letter of June 9, 1964 specifically stated that a wildlife study would have to be completed before any action could be taken on their application. This clearly put the petitioners on notice that the ultimate disposition of their application would be dependent on the results of the wildlife study.
Lastly, the fact that the petitioners spent thousands of dollars to meet the engineering requirements of the ordinance does not entitle them to a permit. Anyone who hopes to receive a permit to dredge must first comply with the engineering criteria. This is, undoubtedly, an expensive and time-consuming procedure. The petitioners, however, incurred this expense knowing full well that the town had the authority to refuse to issue a permit if it was not in the public interest to do so. Having gambled and lost, the petitioners are not equitably entitled to a dredging permit.
In conclusion, it is our opinion that the denial of the dredging permit was a reasonable exercise of the Town Board’s discretion.
Accordingly, the order of the Appellate Division should be reversed.
Vast Vooehis, J.
(dissenting). It seems to me that the decision by the Appellate Division was correct, and that its order should be affirmed. The Town of Hempstead aims to make money by the issuance of permits for dredging to be issued to private persons, firms or corporations that may desire to use the excavated material for fill. This is covered by Local Law No. 4 of 1964, which, insofar as material, followed Ordinance No. 42, adopted by the town in 1958. During four years permits have been issued by the Town Board for the dredging of materials aggregating in ex-cess of 9,000,000 cubic yards, one permit alone authorizing dredging in excess of 2,000,000 cubic yards. *199 The permit directed to be issued by the Appellate Division under the order now on appeal authorizes the removal of 3 60,000 cubic yards, one of the smallest. Although the Town of Hempstead was not obliged to sell submerged soil for fill, it cannot discriminate between applicants where it has established a policy to sell such material formalized by ordinance and local law. Where standards are set forth in the local legislation and are all encompassing, they must be applied without capriciousness. The only part of this Local Law which is claimed to have authorized the Town Board to refuse this permit is the part of section 6 which says that the Town Board may issue the permit unless it finds “ that the public interest will not be otherwise prejudiced thereby”. This language cannot be utilized by the Town Board as a basis for arbitrary discrimination between customers in allowing some to dredge "but not others. Unless Local Law No. 4 of 1964 is repealed, it is incumbent on the Town Board to show evidence of some reasonable basis on which this permit was denied. . It is said that the Town Board has shown a rational basis for its action in determining that “ said removal of underwater land from the area proposed would adversely affect the marine resources of the area ”. If this were a legislative determination by the Town Board, there would be no need for the board to justify it by showing any facts on which such a finding is based. But it is not a legislative determination. The Town Board acted in a legislative capacity when it adopted Local Law No. 4 of 1964. In administering that Local Law by the issuance or withholding of permits, the Town Board is obliged to comply impartially with its own enactment, and acts in an administrative capacity (Matter of Rothstein v. County Operating Corp., 6 N Y 2d 728). It is for this reason that the Town Board has adduced a letter from the State Conservation Department in order to lend support to its action on the theory that the letter is some evidence that it would injure the harvesting of shellfish. The Town Board’s action cannot be sustained by an unsupported assertion that there would be injury to marine life. That would enable it to cloak discrimination between customers by a mere conclusory declaration. Conservation is within the public interest, but this letter from the State Conservation Department has no probative force. The decision of the appeal turns upon whether it amounts to substantial evi *200 deuce on which the board could have made a determination that marine life would be adversely affected.
All that this letter says is that the State Conservation Department plans to review the East Bay area “ as soon as we can have a boat available for the purpose.” The letter adds: “ It seems quite possible that at least a portion of this area might be opened to the taking of shellfish. As soon as we are able to review the area and evaluate our results, new lines of closure will be established. It is the hope of this Department that no future dredging will be done in this area to disturb any more of the natural bay bottom for we feel that this could well become productive once again as far as the harvesting of shellfish is concerned. ’ ’
It was necessary for the town to show some rational basis for refusing a permit to one applicant but not to another. This letter from the Conservation Department, as the Appellate Division has held, does not accomplish this result. It is not a finding that excavation in this area would be injurious to shellfish. It acknowledges that the Conservation Department has not investigated nor made findings upon the subject. It expresses a mere possibility that 1‘ at least a portion of this area might ” be opened to the taking of shellfish. If merely “ a hope ” of a department of the State government forms a legal basis for discriminatory town action affecting private property rights, we have indeed gone a long way toward what the American Bar Association has recently described as “ the administrative state ”. The vagrant wish of the State Conservation Department, without review of the area or evaluation of results, that nothing be done by the town which might possibly injure shellfish is an insufficient basis on which to nullify fair play between man and man or to exempt the Town Board from the necessity of showing reasonable basis for its action.
Before filing their application on May 12, 1964 for this dredging permit, petitioners-respondents consulted the Town Dredging Engineer who designated the borrow area, and the plans filed in behalf of the petitioners were drawn with reference to and based upon that designation' by the engineer. There is no question that the proposed removal would not violate the provisions of section 15 of Local Law No. 4 of 1964 for dredging, nor that it complied with all of the technical engineering requirements. *201 The material was not shown to be required for town purposes, nor is any such contention made by appellants on this appeal. The town requested a boundary line agreement as a condition of issuing the permit, in which it required respondents to give up one and a half acres of land (approximately 56,000 square feet) and required that respondents dredge said land after acquisition by the town without expense to the town. This agreement is set forth in full at pages 38-53 of the record. To be sure, issuance of the dredging permit is not specifically mentioned in the boundary agreement, as it naturally would not have been, but, prior to the execution of the boundary line agreement, James Brierly, the Town Dredging Engineer, and Palmer D. Farrington (then Town Presiding Supervisor), advised Edwin H. Carlin, engineer for petitioners-respondents, that, if the boundary line agreement were executed, the dredging permit would be granted, assuming that all engineering requirements were met as they were. This is not denied by any affidavit by either Mr. Brierly or Mr. Farrington and, instead of its being improbable that these statements were made by the engineer and supervisor, it would seem to be incredible that petitioners would have donated an acre and a half to the town and agreed to dredge it at their own expense unless they had been assured that the dredging permit would be granted. At least $10,000 has already been spent on the strength of those promises. The town wanted the land conveyed by the boundary agreement to widen and deepen a stream for navigational purposes by small craft. Petitioners had no interest in donating it other than to get the fill to develop their 11-acre underwater parcel. It is said on behalf of the Town Board that they were interested in being released from a requirement to set aside 3% of the 11-acre area for park purposes upon completion of the fill. Nothing of the kind is contained in the boundary agreement. The only part of the record in which anything of this kind is found in contained in the letter of Ralph G-. Caso, subsequent Supervisor of Hemp-stead, in which hg said: “ The Town agreed that in consideration of this dedication, it would waive so much and such part of the three per cent park dedication that would yield the private owners a land area sufficient to lay out building plots equal to the number of lots lost by virtue of the dedication.” Three percent of the 11-acre parcel which petitioners propose to develop *202 would amount to .33 acre, or approximately 15,000 square feet. Petitioners dedicated to the town 56,000 square feet. More significant than their dedicating an excess of about one acre over what they were to receive in exchange, petitioners agreed at their own expense to dredge the 56,000 square feet east of the boundary line which they dedicated to the town. This was part of the channel which the town wanted to make available to navigation by small boats. This area is' different from but in the same neighborhood with the one promised to petitioners by the Town Engineer and Supervisor from which they were to excavate the great bulk of fill to raise the level of the 11-acre tract which petitioners proposed to develop. It would be incredible, it seems to me, if petitioners had agreed not only to dedicate but also to dredge at their own expense the acre and a half which they donated to the town, unless they were also to be permitted to dredge from the other larger area designated by the town officials and described in the application for a permit. Petitioners would certainly not have obligated themselves to bring expensive dredging equipment into the area wholly to benefit the town in preparing a channel for small boat owners. Naturally, if they had the permit to dredge from the larger area, they would have taken what they could get from the acre and a half and been glad to keep it without charge. But their doing this without the other motivation would seem to be inexplicable. It was the town that wanted the boundary agreement, Avith this accompanying advantage, not petitioners, and the toAvn got the boundary agreement with its accompanying obligation to dredge on the promise to issue the dredging permit now in suit. The Town Board’s delay of 16 months in ruling upon this permit is indefensible.
For these reasons, it seems to me that the Appellate Division’s decision was right and should be affirmed.
Chief Judge Fuld and Judges Burke, Bebgah, Keating and Bbbitel concur Avith Judge Scileppi; Judge Yak Voorhis dissents and votes to affirm in a separate opinion.
Order of Appellate Division reversed and judgment of Special Term reinstated, without costs.