TOWN OF LIMA, Appellant, v RALPH R. HARPER, Respondent. (Appeal No. 1.)

In the Matter of RALPH R. HARPER, Respondent, v ZONING BOARD OF APPEALS OF THE TOWN OF LIMA et al., Appellants. (Appeal No. 2.)

In the Matter of RALPH R. HARPER, Appellant, v TOWN BOARD OF THE TOWN OF LIMA, Respondent. (Appeal No. 3.)

Fourth Department, January 21, 1977

*Benjamin P. Whitaker, Jr.,* for appellants in Appeals Nos. 1 and 2 and for respondent in Appeal No. 3.

*Robert J. Stanton, P. C.* for respondents in Appeals Nos. 1 and 2 and for appellant in Appeal No. 3.

SIMONS, J. These are three proceedings all relating to the efforts of Ralph Harper (hereafter petitioner) to operate a mobile home park which he purchased in 1969. The park is

located on 27 acres of land in the Town of Lima and one boundary of the property is adjacent to the village line of the Village of Lima. At the time of purchase, about five acres of the land were improved with a house and 45[1] mobile home sites. The remaining land was vacant.

In 1963 the prior owner, Lockwood, had obtained a building permit from the town which allegedly authorized development of 299-300 mobile home sites.[2] In 1968 Lockwood entered into an agreement with the Village of Lima by which the village agreed to permit him to connect a maximum of 60 sites in the park to the village sanitary sewer system upon submission of an appropriate plan and petitioner has succeeded to Lockwood's contract and zoning rights. The 1963 building permit was extended several times, through February, 1972, and each extension was conditioned upon approval of the sanitary facilities by the State Department of Health (now the Department of Environmental Conservation). The State has never given approval of the sanitary facilities of the park.

On March 14, 1971 the town adopted a new zoning ordinance which prohibited the enlargement of petitioner's park unless the property could be expanded as a nonconforming use. The new ordinance contained a comprehensive revision on mobile home park requirements and designated 12 to 13 acres of petitioner's land as "Land Conservation District", a district designed for areas of unusual topography involving drainage and flood hazards.[3] The remainder of the property continued to be zoned agricultural. When petitioner's permit expired in 1972, he attempted to renew it but his application was denied because he could not comply with the requirements of the new zoning ordinance.

---

1. There is some confusion in the record with respect to the existing sites, variously referred to as 45 or 47, and the proposed sites which changed several times apparently because of revised plans.

2. The permit is silent on the point but an exhibit attached to the application displays approximately that number of sites.

3. "Section 700 * * *

"To promote these purposes in Land Conservation Districts no building or other structure shall be built or land used, and no building shall be built, altered or erected to be used for any purposes other than that of:

"1. Farm or other agricultural operation, including gardens, nurseries, greenhouses, and usual farm accessory buildings not including dwellings or buildings housing farm animals or fowl.

"2. Park, playground, athletic field, golf courses, riding academy, game preserve, and other similar uses, including usual accessory buildings.

"3. Municipal or public utility structures or facilities."

The 1971 zoning ordinance provides that no nonconforming use shall be extended unless construction was already under way at the time of the enactment of the zoning ordinance, and, where such construction was under way, it must have been completed within 18 months from the enactment of the ordinance (Town of Lima Zoning Ordinance, § 1008). The town contends that petitioner's right to develop the property for a nonconforming use under the ordinance extends only to the 45 trailer sites existing in 1971. In Appeal No. 2 Trial Term held that petitioner had a valid nonconforming use for 289 mobile home sites and ordered the issuance of a new building permit conditioned upon approval of the sanitary facilities.

That approval has not been forthcoming. The State refuses to approve a private sewage system on petitioner's property and requires that he connect with the existing system of the Village of Lima. Petitioner has held negotiations with officials of the village, town and State since his acquisition of the property in 1969, but despite the Lockwood agreement with the village, his attempts to use the village's facilities have been unsuccessful.

Finally, in 1973, in an effort to solve this sewage problem, petitioner, at the request of the village, requested creation of a town sewer district. The proposed district was to be limited to 60 mobile home sites[4] in petitioner's park, he to pay all the costs of construction and operation and dedicate the system to the town.[5] The newly created town sewer district would then contract with the village for sewer services. A hearing was held in 1975 and the town board denied the petition "in the public interest" (see Town Law, § 194, subd 1, par [d]) because: (1) petitioner proposed a single-owner district; (2) the board members believed that the district should be delayed pending development of a master plan for the community; and (3) petitioner's mobile home park might pre-empt the available capacity of the village sewer system and preclude future development in the town.

Petitioner instituted a CPLR article 78 proceeding, the subject of the third appeal, to annul the board's determination and to compel it to create the sewer district. Special Term ordered petitioner's article 78 proceeding dismissed, holding that the board's denial of the petition to establish a sewer

---

4. The maximum agreed upon in the Lockwood—Village contract.

5. The entire cost would be assessed against him anyway since he was the only owner in the proposed district (see Town Law, § 198, subd 1; § 202).

district was a legislative act not subject to judicial review and that petitioner had not demonstrated the economic feasibility of his plan.

The first appeal deals with an order denying the town's motion for a preliminary injunction to prevent the continued operation of petitioner's park in violation of the zoning ordinance. The motion was denied and the complaint dismissed without prejudice to the commencement of a new action because the moving papers failed to demonstrate irreparable injury to the town.

Quite obviously, petitioner has been caught in a revolving door. His permits from the town to construct a mobile home park were subject to State approval of the sanitary facilities. The State, in turn, ordered that he must connect to the village sanitary sewer system or vacate the existing 45 sites; the village has taken the position that it will contract only with a town sewer district; and the town refuses to create a sewer district. In the meantime the town has rezoned petitioner's property, effectively prohibiting its further development as a mobile home park.

It is petitioner's claim that the successive permits granted for the property since 1963 authorized 300 trailer sites, that he acted upon those permits and that the 1971 zoning ordinance could not divest him of his right to develop 300 sites, although only 45 existed at the time the ordinance was adopted. Assuming that the permits authorized 300 mobile home sites, a legal nonconforming use was not acquired solely by obtaining permission to use the property as specified. The permits entitled the owner to continue the mobile home park as a nonconforming use only if they were acted upon before the adoption of the new ordinance. Petitioner must have made substantial improvements and incurred substantial expense, relying on the permits, to make the land suitable for the permitted use before a vested right to continue the nonconforming use was acquired (*Matter of Lefrak Forest Hills Corp. v Galvin,* 40 AD2d 211, 218; Town of Lima Zoning Ordinance, § 1008; and, see, *Matter of Glenel Realty Corp. v Worthington,* 4 AD2d 702, 703; 1 Anderson, New York Zoning Law and Practice, §§ 6.15, 6.16).

Petitioner concedes that when he bought the property he knew that the permit was conditioned upon suitable sanitary facilities and that the agreement with the village was limited to a maximum of 60 sites. He attempted to prove substantial

improvements and expense in reliance upon the permit by his testimony that in the fall of 1969 he paid $16,400 for paving and in 1970 he spent $1,200 for improving the piping and leach beds. However, these expenses were almost exclusively for the existing 45 mobile home sites, not for the development of future sites, and the expenditures did not result in the appropriation of the entire parcel to mobile home park for purposes of establishing a nonconforming use (see *Matter of Cave v Zoning Bd. of Appeals of Vil. of Fredonia,* 49 AD2d 228, 233).

The operation of the park has been conditioned from its inception on State approval of the sanitary facilities. That condition remains and must be satisfied. However, we expressly note the considerable evidence in this record of the protracted delay by the public officials in failing to resolve this matter. Their delay cannot be used to deny petitioner a right to use his land in a manner which was lawful under the ordinance as it existed prior to revision in 1971 *(Matter of Pokoik v Silsdorf,* 40 NY2d 769; *Marsh v Town of Huntington,* 39 AD2d 945; *Matter of Golisano v Town Bd. of Town of Macedon,* 31 AD2d 85; *Matter of Dubow v Ross,* 254 App Div 706). The town should be directed to renew petitioner's building permit to use his land for 45 mobile home sites subject to State approval of the sanitary facilities.

The trial court did not rule on the constitutionality of the 1971 ordinance because it found a prior nonconforming use for the development of the entire property. Inasmuch as we are modifying, we proceed to the question of the constitutionality of the new ordinance. Only limited evidence on the subject was presented but it apparently included all the proof which the parties intended to introduce, and the issue was submitted to the court. We find that petitioner failed to overcome the presumption of the ordinance's constitutionality *(Williams v Town of Oyster Bay,* 32 NY2d 78; *Rodgers v Village of Tarrytown,* 302 NY 115). He presented evidence of the value of the land if fully developed for mobile home sites and evidence of the reduction in value if the property's use was limited to those uses permitted in the amended ordinance. Proof that a zoning ordinance prevents property from being used for its highest and best use or results in a reduction in value does not necessarily result in invalidity, however *(Dauernheim, Inc. v Town Bd. of Town of Hempstead,* 33 NY2d 468; *Matter of Wulfsohn v Burden,* 241 NY 288). Petitioner's

expert conceded that the property could be used and had value for the uses permitted under the new ordinance and the proof established that there were several acres of the property with serious year-round drainage problems justifying restriction of a portion of the land to land conservation district use.

In Appeal No. 3, petitioner maintains that the town has unlawfully denied his petition for a sewer district and he requests the court to order the town board to establish Town of Lima Sewer District No. 1.

The Legislature has delegated the power to create sewer improvement districts to the town board (Town Law, § 190 *et seq.*). The statute provides that upon petition, and after notice and hearing, the town board shall determine the sufficiency of the petition, the benefit to the property and owners in the proposed district, whether all benefited property and owners are in the proposed district and whether it is in the public interest to grant the relief sought (Town Law, § 194, subd 1). The board decided affirmatively on the petitioner's request in all respects, except it found that the public interest would not be served by establishing the sewer district. It, therefore, denied the petition. Ordinarily, the failure of a legislative body to exercise its powers is not subject to review in the courts (see *Matter of Southern Dutchess Country Club v Town Bd. of Town of Fishkill,* 25 AD2d 866, affd 18 NY2d 870; *Matter of Heller v Rogers,* 26 AD2d 640). However, the statute delegating legislative authority to establish improvement districts to the town board specifically subjects the exercise of that power to judicial review of "any final determination" made by the town board (Town Law, § 195, subd 2) and, therefore, we proceed to the merits of petitioner's claim.

At the public hearing on the petition for a sewer district, petitioner offered professional engineering testimony that the village sewer facilities were more than adequate to serve the proposed district and the State health officials testified in favor of the petition. This evidence was never impeached or contradicted, nor does any evidence appear in the record that the proposed district would have an adverse effect on the residents of the town generally. The opponents of the petition were concerned exclusively with the existence and expansion of the mobile home park.

The town board's determination denying the establishment of a sewer district was invalid because it was not based upon a determination of the public interest vis-à-vis petitioner's appli-

cation in that proceeding, but upon the desirability of continuing a mobile home park in the town. Just as the board may not frustrate an owner's right lawfully to use his land by delaying tactics (see *Pokoik v Silsdorf, supra; Marsh v Town of Huntington, supra; Golisano v Town Bd. of Town of Macedon, supra)*, or by the imposition of restrictions upon the property which are unrelated to the lawful objectives of zoning (see *Westwood Forest Estates v Village of South Nyack*, 23 NY2d 424; cf. *Matter of Belle Harbor Realty Corp. v Kerr*, 35 NY2d 507), so also the municipality may not impose an otherwise lawful condition upon the grant of a building permit and then frustrate the property owner's efforts to comply with the condition by improperly locating the public interest of the inhabitants of the town with respect to the establishment of a sewer district (cf. *Matter of Bernhard v Caso*, 19 NY2d 192).

The board's denial of the petition was premised on three grounds. It is not apparent how the first ground, single ownership, is adverse to the public interest in this case and we find no basis for the board's finding that it is. Second, the application was denied pending some future undefined comprehensive sewer planning. Under the circumstances, such a delay was unlawful (see *Pokoik v Silsdorf, supra; Matter of Golisano v Town Bd. of Macedon, supra;* 1 Anderson, New York Planning and Zoning, § 6.17). It is evident that petitioner's property presents a health hazard which is a proper concern of the town officials, but it presents a health hazard largely because petitioner's attempts to solve the problem have been frustrated by the authorities and the record does not contain any evidence that the town has undertaken any plans for sewage disposal which will permit petitioner to continue his lawful use in the several years that have passed since the park was first developed. By this reasoning the town would have its action effect a practical confiscation of petitioner's property (cf. *Matter of Charles v Diamond*, 42 AD2d 232, 235-236).

Finally, the contention that establishment of a sewer district will impede the future development of the community is not supported by the record. The village system was shown to be more than adequate to handle the limited needs of the park. The use contemplated was only 60 sites (limited by our decision to 45) and this limited use will not interfere with future development in the town, for it was estimated that even with the hook-up of the anticipated 60 sites, the village's system would only be operating at approximately 70% of

average daily capacity. Further, the present sanitation problem is peculiar to petitioner's land and does not relate to a problem of inadequate sewerage general to the community. The financial burden upon the town has been assumed by petitioner's offer to pay for the expenses of operation, his property stands as security, and he has also agreed to supply a bond indemnifying the town.

The determination of the town board should be annulled, the town board ordered to create Town of Lima Sewer District No. 1, and the matter should be remitted to the town board for further proceedings in accordance with article 12 of the Town Law.

In view of our determinations in Appeals No. 2 and No. 3, we affirm the order dismissing the complaint in Appeal No. 1.

CARDAMONE, J. P., DILLON, GOLDMAN and WITMER, JJ., concur.

Order, in Appeal No. 1, unanimously affirmed without costs.

Judgment, in Appeal No. 2, unanimously modified and, as modified, affirmed, without costs.

Judgment, in Appeal No. 3, unanimously reversed with costs, determination annulled and matter remitted to the town board for further proceedings.