UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2005

(Argued: January 24, 2006                                Decided: September 13, 2006)

(Amended: October 25, 2006)

Docket Nos. 05-0541-cv(L), 05-0688-cv(CON), 05-0693-cv(CON), 05-1228-cv(XAP)

_____

CLUBSIDE, INC.,

*Plaintiff-Appellee-Cross-Appellant*,

v.

ERIC VALENTIN, TOWN OF WALLKILL, THOMAS F. NOSWORTHY, JR.,
JAMES McCAREY, and JOAN WOLFE,

*Defendants-Appellants-Cross-Appellees*,

DAVID FURLIN and EDWARD SMITH,

*Defendants*.

_____

BEFORE:                       WALKER,
LEVAL and SOTOMAYOR, *Circuit Judges*.

_____


Appellants Eric Valentin, Thomas F. Nosworthy, Jr., James McCarey, Joan Wolfe, and the Town of Wallkill appeal from the district court's denial of their motions for summary judgment on the ground that the individual defendants are entitled to qualified immunity on appellee Clubside, Inc.'s claims that they violated its rights to due process and equal protection under the Fourteenth Amendment. We reverse the district court's denial of qualified immunity on Clubside's due process claims, holding that Clubside did not have a constitutionally protected property interest in the extension of the sewer district. As to Clubside's equal protection class-of-one claims, we dismiss the appeal from the district court's denial of qualified immunity for lack of jurisdiction. We dismiss Clubside's untimely cross-appeal.

JAMES G. SWEENEY, James G. Sweeney, P.C.,
Goshen, New York, *for Plaintiff-Appellee Cross-Appellant Clubside, Inc.*

JOSEPH G. McKAY, Greenwald Law Offices (Lisa M. Cobb, *of counsel*), Chester, New York, *for Defendant-Appellant Cross-Appellee Eric Valentin*.

Monte J. Rosenstein, Monte J. Rosenstein, P.C., Middletown, New York, *for Defendants-Appellants Cross-Appellees Thomas F. Nosworthy, Jr., James McCarey, and Joan Wolfe*.

Stephen J. Gaba, Drake, Sommers, Loeb, Tarshis, Catania & Liberth, P.L.L.C., Newburgh, New York, *for Defendant-Appellant Cross-Appellee Town of Wallkill*.

SOTOMAYOR, *Circuit Judge*:

This appeal primarily presents the question whether the denial of the petition of plaintiff-appellee cross-appellant Clubside, Inc. (Clubside) for an extension of the Town of Wallkill's municipal sewer district to encompass its property amounted to a denial of its rights to due process and equal protection under the Fourteenth Amendment. For the reasons to be discussed, we hold that defendants-appellants cross-appellees Eric Valentin, Thomas F. Nosworthy, Jr., James McCarey, and Joan Wolfe (collectively, "the Board") did not violate Clubside's constitutional right to substantive due process by denying its petition for an extension of the sewer district because Clubside did not have a protectable property interest in the extension. We therefore hold the Board is entitled to dismissal as to the Clubside's substantive due process claim. We conclude also that we have jurisdiction over the Town of Wallkill's pendent appeal of the substantive due process claim and dismiss it as to them. However, as to Clubside's equal protection class-of-one claim against the Board, we dismiss the appeal from the district court's denial of qualified immunity for lack of jurisdiction. We similarly dismiss for lack of

2

jurisdiction the pendent appeal as to Clubside's equal protection claim against the Town of

Wallkill.[1]  We dismiss Clubside's cross-appeal as untimely.


## BACKGROUND

In recounting the facts underlying this appeal, we set forth the evidence in the light most

favorable to Clubside, the non-moving party, and draw all reasonable inferences in its favor.  *See*

*Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 217 (2d Cir. 2006).

### I.  The Clubside Real Estate Development

Clubside is a landowner and real estate developer in the Town of Wallkill in Orange

County, New York. On December 11, 1996, Clubside submitted a proposal to the Town of

Wallkill Planning Board, a separate entity from the Town Board, to develop approximately 63

acres it owned at the edge of the Orange County Golf Club in the Town of Wallkill.  The

proposed development was to consist of 288 units of attached-duplex rental housing in 144

buildings, primarily for senior citizens. In May 1997, the Town Board amended the zoning law to

permit duplex housing at the Clubside site.  The municipal sewer district that served part of the

Town of Wallkill, however, did not encompass the proposed Clubside development.  Although

all parties initially believed that the proposed Clubside development was also outside the

---

[1]  In a prior version of this opinion, the Court concluded that it had jurisdiction to review the district court's denial of qualified immunity on Clubside's equal protection claims against the Board because those claims could be dismissed based on stipulated facts.  The Court then found that it had pendent appellate jurisdiction over Clubside's equal protection claims against the Town of Wallkill.  In light of arguments raised by Clubside in a petition for rehearing, the Court concludes that Clubside's equal protection claims against the Board present issues of evidentiary sufficiency, and therefore that the Court lacks jurisdiction over those claims.  As a consequence, the Court also lacks jurisdiction over the Town of Wallkill's pendent appeal as to Clubside's equal protection claims.

boundaries of the water district, the Board later determined that it was, in fact, situated within the water district.

In late 1997, Clubside petitioned the Town Board to create new water and sewer districts to serve the proposed development. Then-Town Supervisor Howard Mills wrote Clubside President Gordon LaForge to report that the Board had agreed to extend the water and sewer district to include the Clubside project. The Board, however, did not formally act on the petitions.

In January 2000, Clubside converted its development proposal from a rental project to condominiums that, for the most part, would not be age-restricted. On January 24, 2000, Clubside formally petitioned the Board pursuant to New York Town Law § 194 to extend the water and sewer districts to serve the newly-conceived Clubside property. On February 3, 2000, defendant-appellant Town Supervisor Thomas Nosworthy, Jr. informed Clubside's attorney that the Board had received the water and sewer petition and that it was in the process of "preparing a resolution for a public hearing to establish general guidelines to form water and sewer district extensions." Nosworthy promised to be in contact with Clubside after that resolution passed to set up a work session with the Town Board. The Board ultimately passed the resolution on May 11, 2000, and neither its validity nor application to Clubside's petition is before this Court. By late May of 2000, however, the Board had still not scheduled a public hearing on Clubside's petition. Although the issue was raised at a May 25, 2000 meeting, no board member seconded a motion to hold a public hearing on Clubside's petition.

After receiving advice from counsel that the Board was required by law to hold a hearing on the petition, the Board held a public hearing on July 27, 2000. Clubside's President Gordon

4

LaForge gave a short presentation about the Clubside development, which he described as:

> 202 townhouse units/condominium ownership of which I think it is 64 units
> would be for senior citizens only. The balance of the units would be for the
> general population. They are spread out a little more than three units per acre,
> which is extremely low for townhouses and it is a sixty-three acre parcel of land.
> There would be a club house, swimming pool, two tennis courts and the roads
> would be privately maintained and built.

The Board members asked a variety of questions about the proposed development on topics such as the street width, whether there would be a homeowners' association, and whether renting or subleasing would be permitted. In response to a question about whether renting would be permitted, LaForge answered, "[n]ormally renting is not prohibited. These are homes. People buy the house; it is an upscale development. Prices are going to range from $170 thousand to $270 thousand. Renting is usually not an issue at that price." The record does not reveal that there was any public comment on Clubside's petition.

At the end of the meeting, Town Supervisor Nosworthy moved for the petition to be accepted. Defendant board member David Furlin, who is not a party to this appeal, stated that he "would like to see more information on this," and the application was tabled for review. Clubside's petition was scheduled for an August 17, 2000 "work session" before the Board. Sewer Superintendent Edward A. Smith testified at his deposition that, at one work session held for the Clubside project, he informed the Board that he did not believe that "it was logical to try to control high density housing with water and sewer districts, [and] that if they didn't want high density housing . . . they should take it out of the zoning."

At its meeting on September 28, 2000, the Board unanimously voted against extending

5

the sewer district to the Clubside development.[2] The Board gave no reason or explanation for the denial.

Meanwhile, on August 25, 2000, Clubside's lenders filed a notice of foreclosure on the property. The investors obtained a final judgment of foreclosure on June 6, 2001. On August 29, 2001, a foreclosure sale was held and the property was conveyed to Clubside Investors Inc.

## II. The State Court Litigation

On October 26, 2000, Clubside commenced an action under Article 78 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. §§ 7801-7806 (McKinney 1994), in New York State Supreme Court, Orange County, challenging the Board's determination. In opposition, Supervisor Nosworthy submitted an affidavit dated November 14, 2000, explaining the reasons for the Board's denial of the petition. Among other things, he stated that

> the Town Board members [determined] that a townhouse condominium project, . . . having two and three bedroom units, will attract large families to an already overburdened school district. . . . Moreover, the Town Board has learned from experience that the market value of condominium townhouses in the Town depreciates at a much faster rate than rental units or single-family dwellings. In fact, there are several townhouse developments in the Town which evidence this decline in value, and many are no longer primarily owner-occupied, but are owned by absentee landlords who, in many cases, fail to keep the premises well maintained. The result, in some cases, is that the units become rat-infested, garbage-laden properties detrimental to the public health.

On March 30, 2001, the court ruled for Clubside, annulling the Board's resolution denying the petition and directing the Board to extend the sewer district. The court found that the public-hearing record was "devoid of any basis for [the Board] to have concluded, as it did

_____

[2] The Board also voted against extending the water district. It realized, however, on December 21, 2000, that the property already was within the water district.

without explanation, that it was not in the public interest to grant petitioner's application. Indeed, the record reflects that the public interest would not be adversely affected by the extension requested." *Clubside, Inc. v. Town Bd., Town of Wallkill,* Ind. No. 6862-00, slip op. at 2 (N.Y. Sup. Ct. Mar. 30, 2001) ("*Clubside I*"). The court further observed that "it is clear . . . that the respondent's decision was based on rank speculation intended to restrict or minimize development." *Id.* Accordingly, it held that the September 28, 2000 resolution denying Clubside's petition was arbitrary and capricious, and "not supported by any evidence." *Id.* at 3. The court therefore found that there was no purpose in remanding the petition to the Board to make written findings. *Id.* at 2.

The Board appealed the ruling to the Appellate Division, which affirmed the lower court decision. *See Clubside, Inc. v. Town Bd., Town of Wallkill*, 747 N.Y.S.2d 546 (2d Dep't 2002) ("*Clubside II*"). The court observed that

> it was evident, based on the detailed affidavit of the Town Supervisor submitted in opposition to the petition, that the grounds for the denial were the unsubstantiated fears of the individual members of the Town Board that the condominium development posed public health problems and that the addition of school-age children would burden the local school system.

*Id.* at 547. The Appellate Division thus agreed that the Board's denial of Clubside's petition was arbitrary and capricious. *Id.*

On February 13, 2003, a newly constituted town board met to consider Clubside's pending sewer-district petition that it had been directed to grant in the Article 78 action. For reasons that are not entirely clear from the record, the town board voted to reject the petition. Notwithstanding the vote, an amended final judgment in the Article 78 case was issued on April 11, 2003 granting Clubside's petition.

7

## III.  The Federal Litigation

On August 11, 2003, Clubside filed this action under 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York (Brieant, J.), alleging that the actions of the Board and others denied its right to substantive due process under the Fourteenth Amendment and its right to petition pursuant to the First Amendment, as incorporated through the Fourteenth Amendment. Clubside later amended the complaint to add an equal protection claim.

After the close of discovery, the parties cross-moved for summary judgment and Clubside moved to strike the board members' qualified immunity defense.[3] The district court denied Clubside's motion to strike, finding that issues of fact remained with respect to the defense of qualified immunity. It found that a full trial record would be necessary to resolve the fact-intensive question of whether the due process and equal protection rights claimed by Clubside were clearly established at the relevant time. It further held that issues of fact remained as to whether the town board members acted out of animus to "keep[] a class of suspect persons out of their community."

With respect to the cross motions for summary judgment, the district court dismissed Clubside's claim that defendants had violated its right to petition by allowing almost four months to pass before scheduling a public hearing on the petition. It held that there had been no deprivation of Clubside's rights because the Board ultimately scheduled the hearing and had not prevented Clubside from filing its petition or appealing the adverse decision. Turning to

_____

[3] Clubside stipulated to the dismissal of its claim against Sewer Superintendent Edward Smith.

Clubside's "class of one" equal protection claim, the district court found that a trial was necessary to determine whether two other real estate developers, whose petitions for sewer extensions were granted by the Board, were similarly situated. Considering Clubside's substantive due process claim, the court concluded that "New York's Supreme Court and the Appellate Division have ruled that the Town and Board had no discretion to deny the sewer extension, so long as the sewer system had adequate capacity and the physical ability to make the connection." Because it concluded that the Board had had no discretion to deny the sewer permit, it held that Clubside had a property interest in the sewer extension. The district court also found that issues of fact remained for trial on whether the Board had any rational basis to deny the petition. The district court thus denied the motions for summary judgment. Board members Eric Valentin, Thomas F. Nosworthy, Jr., James McCarey, and Joan Wolfe filed this appeal.[4]

On appeal, the board members maintain that the district court erred in denying them qualified immunity because Clubside did not have a federally protectable property interest in the sewer district extension. They argue further that, even if Clubside did have such a right, their actions were not so arbitrary or irrational as to violate Clubside's right to substantive due process. With respect to the equal protection claim, the board members contend that the district court erred in finding that issues of fact remain with respect to whether other real estate developers whose sewer district petitions were approved were similarly situated and therefore that they are entitled to qualified immunity. The Town of Wallkill raises the same arguments in its appeal. Clubside cross-appeals the denial of its motion to strike the qualified immunity

---

[4] Defendant board member David Furlin does not appeal the denial of his motion for summary judgment.

9

defense under Federal Rule of Civil Procedure 12(f) and the dismissal of its right-to-petition claim.

## DISCUSSION

### I. Jurisdiction and Standard of Review

We have jurisdiction over the individual board members' appeal of the denial of their motion for summary judgment on the basis of qualified immunity because a "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Although the district court stated that factual issues precluded a determination of qualified immunity at this point in the proceedings, it did not point to any specific facts that would have to be resolved other than the Board's alleged animus in keeping certain "suspect classes" out of the Town of Wallkill. Because the Board asserts that, viewing the facts in the light most favorable to Clubside, it did not violate Clubside's constitutional rights or that, even if it did, those rights were not clearly established at the relevant time, this Court has jurisdiction over the interlocutory appeal. *See Gubitosi v. Kapica*, 154 F.3d 30, 32 (2d Cir. 1998) (per curiam); *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996) ("[A]s long as the defendant can support an immunity defense on stipulated facts, facts accepted for purposes of the appeal, or the plaintiff's version of the facts that the district judge deemed available for jury resolution, an interlocutory appeal is available to assert that an immunity defense is established as a matter of law.").

We review a denial of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party. *See Avero Belgium Ins. v. Am. Airlines, Inc.* 423 F.3d

73, 77 (2d Cir. 2005). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

We review *de novo* a district court's denial of qualified immunity. *See Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "In so doing, we apply the two-step test set forth in *Saucier v. Katz*, [533 U.S. 194, 201 (2001)]." *Velez*, 401 F.3d at 84-85. First, we ask whether there was a constitutional violation. If the answer to this question is yes, we must then determine whether the right was clearly established at the time of the violation. *See Saucier*, 533 U.S. at 201.

## II. Substantive Due Process

Clubside claims that the Board's denial of its petition to extend the sewer district violated its right to substantive due process. To prevail on its claim that it was denied a property right by conduct that violated the substantive due process standards of the Fourteenth Amendment, Clubside must show "(1) that [it] had a valid property interest in the granting of the [petition], and (2) that the defendants infringed that property interest in an arbitrary or irrational manner." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001). Because we hold that Clubside lacks a valid property interest in the granting of the petition, we do not consider the second step of the analysis here.

### A.

We begin by recounting the development of this area of the law in order to clarify the analysis for determining whether a landowner has a protectable interest in a particular land-use benefit. This Circuit applies a "clear entitlement" analysis to determine whether a landowner has a constitutionally cognizable property interest in the benefit sought. *See Walz v. Town of*

11

*Smithtown*, 46 F.3d 162, 168 (2d Cir. 1995); *accord Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir. 1995). This approach derives from the analysis set forth in *Board of Regents v. Roth*, 408 U.S. 564 (1972). In *Roth*, the Supreme Court held that, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. We first applied the *Roth* analysis to land-use benefits in *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir. 1985). In that case, we held that a landowner has a clear entitlement to the land-use benefit sought where, "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Id.* at 59.

In *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911 (2d Cir. 1989), we elaborated on the entitlement test set forth in *Yale Auto Parts* and enunciated a more stringent analysis: "Application of the test must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case." *Id.* at 918. We noted that "[e]ven if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." *Id.* In consequence, we held that the "'strong likelihood' aspect of *Yale Auto Parts* comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Id.* Because we concluded that the proper focus for entitlement analysis is "on the degree of official discretion and not on the probability of its favorable exercise, the question of whether an applicant has a property interest will normally

12

be a matter of law for the court." *Id.*

Since *RRI Realty*, we have consistently reaffirmed that our inquiry "focuses on the extent to which the deciding authority may exercise *discretion* in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision." *Zahra*, 48 F.3d at 680. As we explained in *Zahra*, "this standard appropriately balances the need for local autonomy, with recognition of constitutional protection at the very outer margins of municipal behavior. . . . It also recognizes that the Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decisions; in our federal system, that is the province of the state courts." *Id.*; *see also Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 379 (2d Cir. 1995) ("These standards have been crafted to strike the necessary balance between the landowner's need for constitutional protection and local governments' need to regulate matters of local concern.").

We have also held that other forms of "uncertainty" in the application process preclude the finding of a protectable property interest in a land-use permit. *See Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). In *Natale*, we concluded that "[u]ncertainty as to the meaning of applicable law also suffices" to defeat a landowner's claim of entitlement. *Id.* "Thus, in order to establish a federally protectable property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case." *Id.* at 263 n.1.

Most recently, in *Harlen Associates*, we reiterated our standard, stating:

A "legitimate claim of entitlement" exists where, under applicable state law,

13

> "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Walz v. Town of Smithtown,* 46 F.3d 162, 168 (2d Cir.1995) (quoting *Yale Auto Parts v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985)). As a general rule, "entitlement turns on whether the issuing authority lacks discretion to deny the permit, *i.e.,* is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir. 1999).

*Harlen Assocs.*, 273 F.3d at 504. While this last iteration of the standard in *Harlen Associates* arguably could suggest that a property interest can exist when a landowner satisfies just the first part of the standard, *i.e.*, that absent the alleged denial, there is a certainty or very strong likelihood that the application would have been granted, our application of the standard in that case adheres to our precedent and makes clear that this will be sufficient only where the issuing authority has virtually no discretion to deny the application. *Id.*

In short, our precedent makes clear that the analysis of whether a landowner has a protectable property interest in a particular land use benefit focuses "on the degree of official discretion and not on the probability of its favorable exercise." *RRI Realty*, 870 F.2d at 918. We consider whether there was a strong likelihood of issuance "only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Id.* The analysis in this case therefore turns on the degree to which state and local law unambiguously limits the Board's discretion to deny Clubside's petition to extend the sewer district.

## B.

New York Town Law §§ 190 and 194 govern the establishment and extension of municipal-improvement districts, including sewer districts. Section 190 provides, in pertinent part, that "[u]pon a petition as hereinafter provided, the town board of any town may establish or

extend in said town a sewer . . . district." N.Y. Town Law § 190 (McKinney 2004). In turn,

§ 194(1) establishes the petition process and provides:

> After a hearing held upon notice as hereinbefore provided and upon the evidence given threat, the town board shall determine by resolution:
>
> (a) whether the petition is signed, and acknowledged or proved, or authenticated, as required by law and is otherwise sufficient;
>
> (b) whether all the property and property owners within the proposed district or extension are benefited thereby;
>
> (c) whether all the property and property owners benefited are included within the limits of the proposed district or extension;
>
> (d) whether it is in the public interest to grant in whole or in part the relief sought.

The statute does not define what is "in the public interest" for purposes of Town Law

§ 194(1)(d). Section 194(2)(b) further provides that "[i]f and when the town board shall

determine in the affirmative all of the questions set forth in subdivision one of this section, the

board may adopt a resolution approving the establishment or extension of the district."

The Board argues that Clubside did not have a protectable property interest in the

granting of Clubside's sewer-extension petition because the Town Law vests it with broad

discretion to grant or deny petitions. It first asserts that this discretion is given to it in Town Law

§ 194(1)(d), which permits it to consider whether an extension is in "the public interest." It next

contends that it has discretion because the language of the Town Law §§ 190 and 194(2)(b) is

permissive rather than mandatory. Because we agree with the Board's contention concerning the

discretion inherent in appraising the "public interest" we have no need to consider its secondary

argument based on the meaning of the word "may."

1.  *The "Public Interest"*

15

The Board argues that Town Law § 194(1)(d)'s requirement that a town board determine whether a particular extension of a sewer district would be in the "public interest" is a broad grant of discretion. It asserts that determining what is in the public interest necessarily requires a balancing test that involves each town's needs and therefore defeats any claim of entitlement to extension of the sewer district.

Clubside responds that whatever discretion could be embraced by the term public interest has been cabined by the courts. Relying on *Svenningsen v. Passidomo*, 62 N.Y.2d 967 (1984), and *Harper v. Zoning Board of Appeals of Town of Lima*, 43 N.Y.2d 980 (1978), *aff'g Town of Lima v. Harper*, 390 N.Y.S.2d 752 (4th Dep't 1977), it contends that New York courts have interpreted the term public interest narrowly to mean whether there is adequate capacity in the system for the additional sewage, the physical ability to make the connection, and a lack of public health concerns. Clubside maintains that because these specific, objectively ascertainable criteria were met in this situation, the Board had no discretion to deny its application. We do not read *Harper*, *Svenningsen,* and their progeny to have established, to the degree of certainty necessary for a substantive due process claim, such limited criteria for a town board to consider in determining whether to grant a petition.

In *Harper*, the petitioner owned land on which he operated a small mobile-home park. 390 N.Y.S.2d at 754. The Town of Lima had entered into an agreement with the prior owner permitting him to expand the park on the condition that he construct the appropriate sanitary facilities; Harper succeeded to those rights. *Id.* The State Department of Environmental Conservation required that he connect his facilities with the existing sewer system maintained by the Village of Lima. *Id.* at 754-75. The Village of Lima, however, would agree to connect its

16

system only with a municipal sewer district. *Id.* at 755. Harper petitioned pursuant to Town Law § 194(1) for the creation of a Town Sewer District and committed to building the sewer system and dedicating it to the town. The Town Sewer District could then contract with the Village of Lima for sewer service. *Id.* At the public hearing on the petition, the petitioner offered the testimony of an engineer that "the Village sewer facilities were more than adequate to serve the proposed district." *Id.* at 757. State health officials also testified in favor of the petition. *Id.* No evidence was offered that the proposed district would negatively impact the Village's sewer service; rather, the opposition testimony was based on concerns about the existence and expansion of the mobile-home park. *Id.* After the hearing, the Town Board denied the petition as not in the public interest because "(1) petitioner proposed a single-owner district, (2) the Board members believed that the district should be delayed pending development of a master plan for the community, and (3) petitioner's mobile home park might pre-empt the available capacity of the Village sewer system and preclude further development in the Town." *Id.* at 755.

While the Appellate Division's decision in *Harper* makes clear that a town board's finding on the public interest factor must be supported by the record and focused on "the public interest [v]is-a-vis [the] petitioner's application in that proceeding," not on the desirability of the proposed use, 390 N.Y.S.2d at 757, it does not set forth specific criteria on which a town board must make its finding. Instead, the Appellate Division concluded only that "the contention that establishment of a sewer district will impede the future development of the community [was] not supported by the record." *Id.*

In *Svenningsen,* the New York Court of Appeals mentioned the specific criteria upon which Clubside relies, but not in interpreting Town Law § 194. In that case, the petitioners'

17

property was situated on the border of the towns of Rye and Harrison and was located within the Mamaroneck Valley Sewer District. 62 N.Y.2d at 968. Petitioners paid sewer taxes to Westchester County, the Mamaroneck Valley Sewer District, and the Town/Village of Harrison Sewer District. *Id.* Petitioners sought to convert a building on the Rye side of the line to office space. They filed a sewer petition to connect the building to the Harrison sewer line because it was closest to the building. The Town of Harrison conditionally denied the application unless petitioners agreed to give the town approval over the number of offices and the size of the parking lot for the building. *Id.* On appeal, the Town of Harrison argued that it had "absolute discretion" to decide whether to allow the connection because the property was outside its municipal boundary. The New York Court of Appeals held that the Town of Harrison did not have absolute discretion to grant or deny the application to connect the sewer line because the petitioners' property was partly within the town and petitioners paid property and sewer taxes to the town; they therefore had a right to have their application considered on the merits. *Id.* at 969. The court defined the merits as involving the question of whether "because of excessive demands on the system or otherwise, [the proposed connection] would present problems related to the sewer system or the public health of the town." *Id.*

As noted, *Svenningsen* did not involve the question of a town board's discretion under Town Law § 194 to deny a petition to extend a sewer district because Svenningsen's building was already within the Harrison Sewer District. Thus, although the court held that the Town of Harrison had to provide a connection to the sewer district absent a showing of insufficient capacity or health concerns, the court did not address the proper scope of a town's discretion under § 194(1)(d) or limit a town to considering those factors.

18

Moreover, while recent Appellate Division decisions have ruled that a town board's discretion to consider the public interest under § 194(1)(d) does not extend to considerations of the wisdom or desirability of a proposed land use, they do not limit a town board's discretion to the three criteria relied upon by Clubside. *See, e.g.*, *Capitol Real Estate, Inc. v. Town Bd. of Town of Charlton*, 804 N.Y.S.2d 449 (3d Dep't 2005); *Kraizberg v. Shankey*, 561 N.Y.S.2d 600 (2d Dep't 1990). In *Kraizberg*, for example, the Appellate Division held that the town board erred in denying a petition under § 194(1) to establish a sewer district because its decision was based not on substantial evidence, but a desire to minimize development. 561 N.Y.S.2d at 601. *Kraizberg* does not otherwise cabin a town board's discretion in its determination of whether an extension is in the public interest. In *Capitol Real Estate*, an Article 78 action concerning the denial of a petition for an extension of a water district, the Appellate Division "reject[ed the] petitioner's argument that [the town board's] review of the potential impact of the proposed extension should be limited only to the water district itself and its functions." 804 N.Y.S.2d. at 450. Instead, the court held that, "in determining the petition, [the town board] is required to consider the public interest in general." *Id.* Nevertheless, the court concluded that the town board had acted arbitrarily in denying the petition to extend the water district on the basis of concerns that extending the district to service the petitioner's real estate development would increase the town's maintenance costs because substantial evidence did not support this determination. *Id.* at 451.

Thus, while a town board does not have limitless discretion to decide whether an extension of a sewer district is in the public interest, the cases Clubside relies upon do not explicitly define the scope of a board's discretion or limit the appropriate considerations

19

sufficiently to make the Board's discretion "so narrowly circumscribed that approval of a proper application is virtually assured." *RRI Realty*, 870 F.2d at 918. Significantly, these decisions do not provide, with the clarity required for a substantive due process claim, that a petition *must* be granted where an applicant shows sufficient capacity, no physical constraints to connection, and no evidence of potential public health hazards. Nor do they specifically limit the criteria that a town board may consider in determining whether an extension of the sewer district is in the public interest. Hence, we hold that the statutory authority to consider whether a proposed extension or creation of a municipal improvement district is in the public interest vests the Board with sufficient discretion to defeat Clubside's claim to a constitutionally protectable property interest in the extension of the sewer district.

2. *The Effect of the Article 78 Decision*

In the context of land-use benefits, we have held that the fact that an Article 78 court has ordered a town board to grant a particular application after it concluded that the board acted arbitrarily in denying the application does not necessarily mean that the applicant had a property interest in the permit prior to the Article 78 proceeding. *See RRI Realty*, 870 F.2d at 919; *see also Natale*, 170 F.3d at 264 (holding that the state court's "conclusion that Natale's right was sufficiently clear to warrant mandamus relief as a matter of state law does not establish that Natale's entitlement to [the] permits was so clear as to accord him a federally protectable property right in those permits"); *Bower Assocs. v. Town of Pleasant Valley*, 2 N.Y.3d 617, 624, 629 (2004) (holding that Bower Associates did not have a property interest in the subdivision approval even though the Appellate Division had found in its decision in a related Article 78 action that the claimants had "met all the conditions needed for approval of its subdivision

20

application" (internal quotation marks omitted)).  Simply put, an Article 78 court's order directing a town board to take particular action when the court has determined that the board's ruling was arbitrary and capricious and not supported by substantial evidence – particularly where, as here, the court finds that remand would be futile because the only asserted basis for the board's ruling was impermissible – is not equivalent to a finding that the town board lacked discretion in the first instance.  *See Viscio v. Town of Guilderland Planning Bd.*, 525 N.Y.S.2d 439, 441 (3d Dep't 1988) (noting that "it is generally more proper to remit a matter [to the board] . . . rather than to direct" a particular action, but affirming the lower court's grant of relief directing action where the record was clear and respondent had not suggested that remittal was necessary).

Clubside argues that the state court judgments in its favor are evidence that it had a right in the grant of its petition.  Clubside, however, has not argued on appeal that these court judgments–by themselves–created a constitutionally protected entitlement to a permit even if such entitlement did not previously exist.  We express no opinion as to whether a state court judgment in an applicant's favor may of itself create a due process right where none already exists.

Because it is not the role of the federal courts to protect landowners from merely arbitrary actions that are correctable by state remedies, *see Natale* 170 F.3d at 263, our analysis does not turn on the outcome of the Article 78 proceeding.  Instead, we look to whether, "prior to the Article 78 proceeding, "the issuing authority lack[ed] discretion to deny the permit." *Harlen Assocs.*, 273 F.3d at 504 (internal quotation marks omitted).

Here, the Article 78 court concluded that "the grounds for the denial were the

21

unsubstantiated fears of the individual members of the Town Board that the condominium development posed public health problems and that the addition of school-age children would burden the local system" and therefore that the Board's decision was arbitrary and capricious. *Clubside II,* 747 N.Y.S.2d at 547. Neither the State Supreme Court nor the Appellate Division discussed whether the Board's decision could have been justified on other grounds, such as the potential costs to Wallkill, but only determined that the grounds it relied upon were unsupported by the record. Thus, the possibility that the permit "could have been denied on non-arbitrary grounds defeats the federal due process claim." *RRI Realty*, 870 F.2d at 918.

In *Harlen Associates*, we rejected a similar argument that a landowner's filing of a valid permit application nullifies the discretion the statute vested in the permit-granting authority. *See* 273 F.3d at 504. Like Clubside, the plaintiff there asserted that it had filed a valid application and that, once it had done so, the board had no discretion to deny the application. *Id.* We found that argument "untenable," explaining that "[i]t would make the Board nothing more than a rubber stamp and reduce its role in the process to a rote check of whether the proper filings had been made. Such a result is diametrically opposed to the intent of the Village in drafting its zoning law to give the Board discretion and the duty to protect the interests of the community." *Id.* This reasoning is fully applicable to Town Law §§ 190 and 194, which, as discussed, vest a town board with discretion to determine, as an initial matter, whether the extension of a sewer district is in the public interest.

In sum, as we read Town Law §§ 190 and 194, these provisions vest the Board with some discretion to determine whether to grant a petition for an extension to the sewer district. While this discretion is not unlimited and apparently does not permit a town board to base its

22

determination on speculation or the desire to minimize development, it is not so circumscribed as to make the approval of a properly filed petition virtually assured. Moreover, because the rulings of the State Supreme Court and the Appellate Division in Clubside's Article 78 proceeding do not establish that, prior to the Article 78 proceeding, the Board lacked discretion to deny the petition, we hold that Clubside did not have a constitutionally protected property interest in the sewer-district extension. Clubside's substantive due process claim therefore fails as a matter of law. As a result, the board members are entitled to dismissal of Clubside's substantive due process claim.

### III. Equal Protection

#### A.

Clubside also maintains that the denial of its petition was a violation of its right under the Equal Protection Clause of the Fourteenth Amendment. Clubside proceeds on a "class-of-one" theory, arguing that the Board singled it out intentionally for arbitrary treatment without a rational basis. In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court recognized that plaintiffs state an equal protection claim where they allege that they were intentionally treated differently from other similarly-situated individuals without any rational basis. *Id.* at 564; *accord Bizzarro v. Miranda*, 394 F.3d 82, 88 (2d Cir. 2005).

We have held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. *See Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005). This showing is more stringent than that used at the summary judgment stage in the employment discrimination context. *Id.* at 105. This is because "the existence of persons in similar circumstances who received more favorable

treatment than the plaintiff" in a class-of-one case "is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Id.* Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Id.* Generally, whether parties are similarly situated is a fact-intensive inquiry. *See Harlen Assocs.*, 273 F.3d at 499 n.2. A court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation, however, where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated. *Id.*; *cf. Neilson*, 409 F.3d at 106 (holding that no rational person could have found that the comparators were similarly situated, notwithstanding the jury's finding to the contrary).

**B.**

Accepting, as the Board must, Clubside's evidence in support of its equal protection claim, the Board argues that this evidence fails as a matter of law to establish that Clubside was similarly situated to the other land developers whose permits were approved. Clubside identifies two projects that it asserts were similarly situated to its project in all respects except that their petitions were promptly acted upon and approved.[5] First, Clubside points to the Lynwood Hills

---

[5] In his reply brief, defendant-appellant Eric Valentin asserts that the form of this evidence is insufficient to defeat summary judgment because it was proffered to the court in an attorney affidavit by Clubside counsel James Sweeney. Even if we could entertain this claim on an interlocutory appeal, we would not do so here given that we generally do not consider arguments that are raised for the first time in a reply brief. *See Thomas v. Roach*, 165 F.3d 137,

24

development by Chefa Associates,[6] which sought extensions of the water and sewer districts for its 28-lot development of single-family homes. Chefa Associates petitioned for an extension of Wallkill's water and sewer districts on June 22, 2000, and its petition was approved by the Board on July 27, 2000, the same night that the Board held a public hearing on Clubside's petition. Clubside offers no other details about the Lynwood Hills project.

At 28 lots, the Lynwood Hills project is significantly smaller than the 288-unit development proposed by Clubside. The projects also involve different types of housing and density levels: single-family homes for Lynwood Hills and duplex/triplex townhouses for Clubside. Clubside asserts that these differences are not material. We disagree. *See Campbell v. Rainbow City*, 434 F.3d 1306, 1314-15 (11th Cir. 2006) (explaining that, in the land-use context, to be prima facie similar, the comparators must be engaged in the same type of land use); *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (holding that the comparator residential developments were not prima facie similar because, for example, one did not have the same layout and another did not seek the same variances from the planning board). These differences of type and scale would impose significantly different burdens on Wallkill's sewer and water systems. *Cf. Neilson*, 409 F.3d at 106 (explaining that the comparators were not similar to plaintiff because they immediately admitted their wrongdoing whereas the plaintiff falsely reported the incident that led to his disciplinary sanction). On this record, no reasonable juror could conclude that the Clubside and Lynwood Hills developments were similarly situated.

_____

146 (2d Cir. 1999).

[6] At one point in the record, the name of the real estate developer is spelled "Shefa Associates." For consistency, we use the spelling that both parties use in their briefs.

Clubside also points to the Strathmore-Cottage Street development by Kabro of Middletown, LLC, which sought an extension of the sewer district to incorporate its 285-unit development. Clubside avers that the units are "multifamily," but there is no evidence in the record to indicate whether these units were structured as rental properties or condominiums. Kabro filed a petition to extend the sewer district to encompass its property on July 13, 2001, and received approval on October 11, 2001. Both the filing and approval of the Strathmore-Cottage Street petition therefore came after the New York Supreme Court's decision of March 14, 2001, in Clubside's Article 78 action, which found that the Board's denial of Clubside's petition was arbitrary and capricious and not supported by substantial evidence. The Board asserts that the intervening decision indicating the impropriety of a denial based on unsubstantiated fears of increased development changed its understanding of its powers and the reasons for which it could deny sewer district petitions.

However, Clubside points out that the Board *again* voted to reject Clubside's petition in February 2003, even after the New York Supreme Court's decision—indeed, even after the Supreme Court's decision had been affirmed by the Appellate Division. Therefore, a reasonable trier of fact could conclude that the intervening decision was not responsible for the difference between the Board's treatment of Kabro's petition and its treatment of Clubside's petition. Because it cannot be determined based on stipulated facts whether Clubside was treated differently from another similarly situated land developer, we lack jurisdiction over the Board's appeal from the denial of qualified immunity as to Clubside's equal protection claim. *See Salim v. Proulx*, 93 F.3d 86, 89-91 (2d Cir. 1996) (explaining that this Court lacks appellate jurisdiction to review a district court's denial of qualified immunity on a motion for summary judgment

26

where the denial is based on a question of evidentiary sufficiency). We therefore dismiss the Board's appeal from the denial of qualified immunity as to Clubside's equal protection claims.

## IV. The Pendent Appeals

### A.

In contrast to the individual board members, the Town of Wallkill does not have a qualified immunity defense, *see Owen v. City of Independence*, 445 U.S. 622, 657 (1980), and, in consequence, is not entitled to immediate appellate review of the denial of its motion for summary judgment. Nevertheless, because we have jurisdiction over the individual board members' appeals, Wallkill argues that the issues it raises are inextricably intertwined with those pressed by the individual board members and that we therefore have pendent jurisdiction over its appeal.

In some instances, we have discretion to review pendent appeals by parties who are not entitled to immediate appellate review if they raise issues that are necessary to ensure meaningful review of the immediately appealable issues or are inextricably intertwined with the appealable issues. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995). Issues are inextricably intertwined if "there is 'substantial factual overlap bearing on the issues raised.'" *Toussie v. Powell*, 323 F.3d 178, 184 (2d Cir. 2003) (quoting *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1050 (2d Cir. 1997)).

As we recently stated in *Demoret v. Zegarelli*, 451 F.3d 140 (2d Cir. 2006), "the merits of a constitutional claim generally are inextricably intertwined with qualified immunity because we must determine whether a constitutional right has been violated before deciding whether the right was clearly established." *Id.* at 152. Moreover, where we premise a ruling that defendants are

27

entitled to dismissal on the fact that no individual defendant violated the plaintiff's constitutional rights, and the possibility of a municipality's liability arises solely from the actions of an employee who is entitled to qualified immunity on that ground, "we may, in our discretion, reach the liability of the municipality under the doctrine of pendent appellate jurisdiction." *Id.*; *see also Sadallah v. City of Utica*, 383 F.3d 34, 39 (2d Cir. 2004) (exercising pendent appellate jurisdiction where claim against the municipality was based on the same argument rejected in finding that the individual defendants had not violated the plaintiffs' rights and were therefore entitled to qualified immunity). Simply put, if a claim fails as to the individual defendants because there was no violation of the plaintiff's constitutional rights, then it necessarily fails as to the municipality as well.

Here, we have concluded that the individual board members are entitled to qualified immunity on Clubside's substantive due process claim because they did not violate Clubside's substantive due process rights under the Fourteenth Amendment. It is therefore not possible for Wallkill to be held liable on this claim. Exercising our pendent appellate jurisdiction, we hold that Clubside's substantive due process claim against Wallkill should be dismissed. Because we lack jurisdiction over the Board's appeal as to Clubside's equal protection claim, we also lack jurisdiction over the pendent appeal as to Clubside's equal protection claim against Wallkill.

**B.**

Clubside appeals the denial of its motion to strike the board members' qualified immunity defense and the dismissal of its claim alleging that defendants violated its right to petition the government by not bringing its petition for the sewer extension to a public hearing until July 27, 2000. Clubside filed its notice of cross-appeal in the district court on February 10, 2005, more

28

than thirty days after the district court's denial of the motion for summary judgment was entered in the docket on December 29, 2004. *See* Dkt. No. 03-cv-6049, Entry No. 80. Clubside's appeal was thus beyond the deadline provided by Federal Rule of Appellate Procedure 4(a)(1)(A). *See* Fed. R. App. P. 4(a)(1)(A) ("In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered."). Moreover, the principal notice of appeal was filed by defendant Eric Valentin on January 26, 2005,[7] *see* Dkt. No. 03-cv-6049, Entry No. 86, making Clubside's appeal one day late under the deadline imposed by Rule 4(a)(3). *See* Fed. R. App. P. 4(a)(3) ("If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.").

We have, in our discretion, disregarded a party's day-late notice of cross-appeal in certain circumstances. *See Textport Oil Co. v. M/V Amolyntos*, 11 F.3d 361, 366 (2d Cir. 1993) (holding that "'the requirement of a cross-appeal is a rule of practice which is not jurisdictional and in appropriate circumstances may be disregarded'" (quoting *Finkielstain v. Seidel*, 857 F.2d 893, 895 (2d Cir. 1988))). However, Clubside has not given any reason for its tardiness, and in any event its cross-appeal is without merit. We therefore dismiss it.

---

[7] In an earlier version of this opinion, we observed that Clubside's attorneys had misled the Court as to the date of Valentin's appeal. However, it has been called to our attention that the day following Clubside's inaccurate letter, Clubside submitted a supplemental letter recognizing and correcting the error. Due to a mistake in the Clerk's office, Clubside's supplemental letter was not distributed to the panel. Any prior implication of bad faith is hereby withdrawn.

**CONCLUSION**

For the foregoing reasons, we REVERSE the district court's denial of qualified immunity as to Clubside's substantive due process claims and REMAND the case to the district court with instructions to dismiss those claims. We DISMISS for lack of jurisdiction the appeals from the district court's denial of qualified immunity on Clubside's equal protection claims. We DISMISS as untimely Clubside's cross-appeal.