*623
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 In the two appeals before us, appellants claim they were deprived of civil rights protected by the United States Constitution when the municipal defendants wrongfully refused consent to land-use permit applications. Although the projects ultimately proceeded to completion, appellants seek damages under 42 USC § 1983 for the delays occasioned by the wrongdoing. We conclude, as did the Appellate Division, that there was no constitutional violation and the complaints should be dismissed.
 

 I.
 

 Bower Associates v Town of Pleasant Valley
 

 Bower Associates, a housing developer, owns approximately 91 acres in Dutchess County—88 acres in the Town of Poughkeepsie and three adjacent acres in the Town of Pleasant Valley. In August 1999, Poughkeepsie approved Bower’s plan to subdivide the land and construct the Stratford Farms subdivision—134 detached single-family homes and 51 townhouses.
 
 [1]
 
 The project has two access roads—one wholly within Poughkeepsie, the second partially in Pleasant Valley, through the three-acre Bower Associates subdivision. Poughkeepsie’s final approval of Stratford Farms was conditioned on approval by Pleasant Valley of the access road partially within that Town.
 

 In January 1999, Bower applied to the Pleasant Valley Planning Board for permission to subdivide its three acres there to create three residential homes and access roads for use by both Bower subdivisions. In January 2000, the Pleasant Valley Planning Board denied Bower’s application, citing numerous environmental concerns relating to the Stratford Farms subdivision.
 

 In Bower’s challenge under CPLR article 78, Supreme Court directed approval of the subdivision plan, concluding that the Planning Board’s actions were arbitrary in that its determination was not based on environmental concerns unique to the Bower Associates subdivision. Rather, “the determination was driven largely by community pressure because the Stratford
 
 *624
 
 Farms subdivision located in the Town of Poughkeepsie would provide no tax benefit to the Town of Pleasant Valley.” The Appellate Division affirmed, agreeing that Bower “met all the conditions needed for approval of its subdivision application in both this and the related Stratford [Farms] subdivision”
 
 (Matter of Bower Assoc. v Planning Bd. of Town of Pleasant Val.,
 
 289 AD2d 575, 575 [2d Dept 2001]).
 

 Its article 78 relief in hand, in March 2001 Bower commenced this civil rights action pursuant to 42 USC § 1983 against the Town of Pleasant Valley and its Planning Board for $2 million in damages, alleging a denial of procedural and substantive due process, equal protection and just compensation. Supreme Court denied defendants’ motion to dismiss, but the Appellate Division reversed, finding no cognizable property interest entitling Bower to substantive due process protection, both because the Board had discretion in granting subdivision approval and because defendants violated no rights protected by the United States Constitution (304 AD2d 259 [2d Dept 2003]). Further, the Appellate Division dismissed Bower’s takings and equal protection claims, concluding that Bower alleged no unlawful taking, and failed to show that the subject property was treated differently from other similarly situated properties. We now affirm.
 

 Home Depot v Dunn
 

 In February 1996, Home Depot, U.S.A., Inc., a home improvement retailer, obtained site plan approval from the Village of Port Chester to develop an 8.33 acre site for a retail establishment of approximately 101,467 square feet, with an 18,000 square foot outdoor garden center and 537 parking spaces in Port Chester, at the border between Port Chester and the City of Rye.
 
 [2]
 
 The facility opened in February 2000, after long wrangling with defendants, the City of Rye, its Mayor and City Council members (collectively Rye).
 

 As an “Interested Agency” in the environmental review process led by Port Chester, Rye demanded that four traffic-mitigating measures be imposed, among them the widening of Midland Avenue in Rye—and Port Chester made that demand a
 
 *625
 
 condition for its approval of the project.
 
 [3]
 
 Because Midland Avenue is a county road within the City of Rye, the plans also required the County’s approval, which in turn required the City’s approval. Thus, without Rye’s go-ahead, Home Depot could not proceed.
 

 Beginning in fall 1996 with a Home Depot letter threatening damages actions unless Rye signed the county permit, tension mounted. After several executive sessions of the Rye City Council, and negotiations with Home Depot, the parties reached tentative settlement in February 1997, with Rye exacting a promise of a $200,000 payment by Home Depot and additional traffic-mitigation measures, and agreeing not to appeal an adverse decision in its second article 78 proceeding against Port Chester. In March 1997, however, after community opposition, the City Council rejected the settlement and refused consent to the permit.
 

 In April 1997, Home Depot commenced two suits—an article 78 proceeding to compel Rye to sign (and the County of Westchester to issue) the permit, and a civil rights action pursuant to 42 USC § 1983 against the Mayor and the City Council members (both personally and officially) seeking $50 million in compensatory damages and unspecified punitive damages, for delaying construction by more than two years. As a July 1997 Home Depot interoffice memorandum reflects, Home Depot saw the “real value” of the section 1983 action “as leverage for settlement.”
 

 On January 30, 1998, in Home Depot’s article 78 proceeding, Supreme Court—while recognizing that the actions Home Depot sought to compel were “of a discretionary nature”
 
 [4]
 
 held that Rye’s insistence on additional mitigation measures and its refusal to approve the permit were arbitrary and capricious. The court annulled Rye’s denial of the road-widening permit, and the Appellate Division affirmed (259 AD2d 547 [2d Dept 1999]). At about that time, however, Home Depot’s site plan approval from Port Chester expired, which necessitated a third
 
 *626
 
 environmental review. Port Chester issued a new site plan approval, which did not require the widening of Midland Avenue or Rye’s consent. Construction began almost immediately and the facility opened in February 2000.
 

 Meanwhile, discovery proceeded in the section 1983 action, after which Home Depot sought summary judgment and Rye cross-moved for dismissal of the complaint.
 
 [5]
 
 Supreme Court granted Home Depot’s motion for summary judgment with respect to liability on its substantive due process claim, holding that Home Depot had a “clear entitlement to defendants’ approval of the permit” because defendants’ refusal to sign off on the permit lacked a rational basis, and that defendants’ conduct was a gross abuse of governmental authority. The court denied Home Depot’s motion for summary judgment on the equal protection claim, finding a triable issue with respect to the similarities of other permit applications to Home Depot’s; the court further denied both sides summary judgment with respect to the takings claim, and denied defendants’ claim of immunity. The Appellate Division reversed and dismissed the complaint, concluding that Home Depot had failed to raise a triable issue of fact as to a due process violation and that defendants were entitled to qualified immunity, rendering the remaining contentions academic (305 AD2d 459 [2d Dept 2003]). We now affirm as to the lack of a constitutional violation, and thus need not reach the immunity issue.
 

 II.
 

 In the land-use context, 42 USC § 1983 protects against municipal actions that violate a property owner’s rights to due process, equal protection of the laws and just compensation for the taking of property under the Fifth and Fourteenth Amendments to the United States Constitution
 
 (Town of Orangetown v Ma-gee,
 
 88 NY2d 41, 49 [1996]). Both cases before us center on alleged deprivation of substantive due process; in this Court,
 
 *627
 
 Home Depot also presses a claimed violation of the guarantee of equal protection.
 

 We underscore at the outset of our analysis the Appellate Division’s observation that “42 USC § 1983 is not simply an additional vehicle for judicial review of land-use determinations”
 
 (Bower Assoc. v Town of Pleasant Val.,
 
 304 AD2d 259, 263 [2d Dept 2003]). In the same vein, federal courts dismissing section 1983 land-use claims have repeatedly noted that they do not function as zoning boards of appeal, or substitute for state courts interpreting land-use regulations. The point is simply that denial of a permit—even an
 
 arbitrary
 
 denial redressable by an article 78 or other state law proceeding—is not tantamount to a constitutional violation under 42 USC § 1983; significantly more is required. With that in mind, we turn to consideration of appellants’ claims.
 

 Substantive Due Process
 

 More often litigated in federal courts, the issue of substantive due process in land-use cases has come before this Court once, in
 
 Town of Orangetown v Magee (88
 
 NY2d 41 [1996]). There, the Magees had acquired 34 acres of land in the Town of Orangetown at an estimated cost of $3 million in order to construct a 184,000 square foot industrial building. Years later, after plans had been approved, a permit issued and more than $4 million spent on the land and building, the Town revoked the permit and amended its Zoning Code to preclude commercial buildings on the land, halting the project. We agreed with the trial court and Appellate Division that the Town’s action violated 42 USC § 1983, and affirmed the order reinstating the building permit and awarding the Magees damages of $5,137,126, costs and attorneys’ fees.
 

 Drawing on federal precedents, we set out the two-part test for substantive due process violations. First, claimants must establish a cognizable property interest, meaning a vested property interest, or “more than a mere expectation or hope to retain the permit and continue their improvements; they must show that pursuant to State or local law, they had a legitimate claim of entitlement to continue construction”
 
 (Magee, 88
 
 NY2d at 52 [internal quotation marks omitted]). Second, claimants must show that the governmental action was wholly without legal justification
 
 (id.
 
 at 53).
 

 Key to establishing the Magees’ cognizable property interest was that the right to develop their land had vested under state
 
 *628
 
 law: they owned the land, a permit and improvements and “unquestionably would have received the limited future authorizations necessary to complete the project. . . . [T]he Town had ‘engendered a clear expectation of continued enjoyment’ of the permit sufficient to constitute a protectable property interest for purposes of a section 1983 claim”
 
 (Magee,
 
 88 NY2d at 52-53, quoting
 
 Barry v Barchi,
 
 443 US 55, 64 n 11 [1979]). The Magees satisfied the second requirement by establishing that the Town’s actions were “without legal justification and motivated entirely by political concerns”
 
 (Magee,
 
 88 NY2d at 53).
 

 Federal courts elaborating on the first element of the test have noted that it should be applied “with considerable rigor”
 
 (RRI Realty Corp. v Incorporated Vil. of Southampton,
 
 870 F2d 911, 918 [2d Cir 1989]). Even if “objective observers would estimate that the probability of [obtaining the relief sought] was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest”
 
 (id.).
 
 Beyond a vested property right arising from substantial expenditures pursuant to a lawful permit (as in
 
 Magee),
 
 a legitimate claim of entitlement to a permit can exist only where there is either a “certainty or a very strong likelihood” that an application for approval would have been granted
 
 (Harlen Assoc. v Incorporated Vil. of Mineola,
 
 273 F3d 494, 504 [2d Cir 2001]).
 
 [6]
 
 Where an issuing authority has discretion in approving or denying a permit, a clear entitlement can exist only when that discretion “is so narrowly circumscribed that approval of a proper application is virtually assured”
 
 (Villager Pond, Inc. v Town of Darien,
 
 56 F3d 375, 378 [2d Cir 1995];
 
 see also Natale v Town of Ridgefield,
 
 170 F3d 258, 263 [2d Cir 1999];
 
 Walz v Town of Smithtown,
 
 46 F3d 162, 168 [2d Cir 1995]).
 

 As for the second element of the test, “only the most egregious official conduct can be said to be arbitrary in the constitutional sense”
 
 (City of Cuyahoga Falls, Ohio v Buckeye Community Hope Found.,
 
 538 US 188, 198 [2003] [internal quotation marks omitted];
 
 see also Harlen,
 
 273 F3d at 501 [board action based on community opposition is not unconstitutionally arbitrary “if the opposition is based on legitimate state interests such as,
 
 inter alia,
 
 traffic, safety, crime, community pride, or noise”
 
 *629
 
 (internal quotation marks omitted)];
 
 Natale,
 
 170 F3d at 263 [“(s)ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority”];
 
 Lisa’s Party City, Inc. v Town of Henrietta,
 
 185 F3d 12, 17 [2d Cir 1999] [where town acted in accordance with a legitimate concern, it cannot be said to have acted “in an outrageously arbitrary manner so as to violate (plaintiffs) substantive due process rights”]).
 

 The two-part test strikes an appropriate balance between the role of local governments in regulatory matters affecting the health, welfare and safety of their citizens, and the protection of constitutional rights “at the very outer margins of municipal behavior. It represents an acknowledgment that decisions on matters of local concern should ordinarily be made by those whom local residents select to represent them in municipal government”
 
 (Zahra v Town of Southold,
 
 48 F3d 674, 680 [2d Cir 1995]).
 

 Applying this test, we agree with the Appellate Division that neither appellant established a cognizable property interest or arbitrary conduct of a constitutional dimension.
 

 While recognizing the discretion of the Planning Board in the subdivision approval process, Bower argues that because the Board acted
 
 outside its discretion
 
 there was necessarily a deprivation of a protected property right. This claim relies heavily on the Appellate Division’s conclusion in the article 78 proceeding that Bower had “met all the conditions needed for approval of its subdivision application in both this and the related Stratford [Farms] subdivision” (289 AD2d at 575). In effect, Bower argues that victory in an article 78 proceeding—a finding that conduct was arbitrary, capricious and without rational basis, or an abuse of discretion, or even action beyond or outside a board’s discretion—establishes a constitutionally protected property interest.
 

 The law is otherwise. While the existence of discretion in a municipal actor does not alone defeat the existence of a property interest in a permit applicant, that discretion must be so narrowly circumscribed that approval is virtually assured. That was the case in
 
 Magee
 
 (88 NY2d at 52 [town engendered clear expectation of future authorizations]), and
 
 Walz v Town of Smithtown
 
 (46 F3d 162, 168 [2d Cir 1995] [so long as the permit application stated nature, location, extent and purpose of the proposed excavations, there was no discretion to decline the permit]), and
 
 Sullivan v Town of Salem
 
 (805 F2d 81, 85 [2d Cir
 
 *630
 
 1986] [if homes fully conformed to building requirements, builder was entitled to certificates of occupancy]). That is not the case here.
 

 We reach the same conclusions as to Home Depot, where the actions it sought to compel were discretionary in nature and that discretion had not been so circumscribed as to create a clear entitlement to Rye’s signature on the County’s permit. Moreover, unlike Bower (which owned the subject land), Home Depot at the time of Rye’s refusal to consent to the road-widening permit was a contract vendee and, significantly, had only conditional site plan approval for the property it hoped to buy.
 

 In neither case was the challenged conduct constitutionally arbitrary. While the lower courts concluded that the municipalities’ actions in both cases were arbitrary, capricious and without rational basis in an article 78 sense, what is lacking is the egregious conduct that implicates federal constitutional law
 
 (see e.g. Walz,
 
 46 F3d 162 [1995] [homeowner compelled to convey portion of property in order to obtain water and utility service];
 
 Scott v Greenville County,
 
 716 F2d 1409 [4th Cir 1983] [moratorium to limit rental housing for minorities]).
 

 Thus, we agree with the Appellate Division in each case that appellant has failed to state a cause of action for a due process violation.
 

 Equal Protection
 

 Unlike substantive due process, the Equal Protection Clause has generated relatively few federal court decisions in land-use cases, and none in this Court.
 
 [7]
 
 Because equal protection can no more become another general overseer of local land-use determinations than substantive due process, the standards must be applied with the same “rigor”
 
 (see RRI Realty Corp. v Incorporated Vil. of Southampton,
 
 870 F2d at 918).
 

 The essence of a violation of the constitutional guarantee of equal protection is, of course, that all persons similarly situated must be treated alike. Home Depot’s equal protection challenge does not rest on differential treatment as a constitutionally
 
 *631
 
 protected suspect class, or denial of a fundamental right
 
 (see e.g. Frooks v Town of Corttandt,
 
 997 F Supp 438, 453 [SD NY 1998],
 
 affd
 
 182 F3d 899 [2d Cir 1999] [unpublished op]). Rather, Home Depot’s equal protection claim sounds in selective enforcement
 
 (see Village of Willowbrook v Olech,
 
 528 US 562 [2000]).
 

 As such, a violation of equal protection arises where
 
 first,
 
 a person (compared with others similarly situated) is selectively treated and
 
 second,
 
 such treatment is based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person
 
 (Harlen Assoc. v Incorporated Vil. of Mineola,
 
 273 F3d 494, 499 [2d Cir 2001]). In that Home Depot does not allege selective treatment based on race, religion or punishment for the exercise of constitutional rights, it must demonstrate that Rye singled out its request for consent to the road-widening permit with malevolent intent.
 

 The “similarly situated” element of the test asks “whether a prudent person, looking objectively at the incidents, would think them roughly equivalent”
 
 (Penlyn Dev. Corp. v Incorporated Vil. of Lloyd Harbor,
 
 51 F Supp 2d 255, 264 [ED NY 1999]). But even different treatment of persons similarly situated, without more, does not establish a claim. What matters is impermissible motive: proof of action with intent to injure—that is, proof that the applicant was singled out with an “evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances”
 
 (Masi Mgt. v Town of Ogden
 
 [appeal No. 3], 273 AD2d 837, 838 [4th Dept 2000], quoting
 
 Matter of 303 W. 42nd St. Corp. v Klein,
 
 46 NY2d 686, 693 [1979]). The following cases (where federal courts denied motions to dismiss equal protection claims) are illustrative:
 
 Forseth v Village of Sussex
 
 (199 F3d 363, 371 [7th Cir 2000] [village official demanded and received significant personal financial gain]);
 
 LaTrieste Rest. & Cabaret Inc. v Village of Port Chester
 
 (40 F3d 587, 590 [2d Cir 1994] [village’s enforcement tactics to prohibit proposed land use included fines and arrests]);
 
 Brady v Town of Colchester
 
 (863 F2d 205 [2d Cir 1988] [permit denied because owner leased space to opposing political party]);
 
 Gavlak v Town of Somers
 
 (267 F Supp 2d 214, 223 [D Conn 2003] [town officials acted to destroy business after owner refused to make a zoning official a partner in the business]).
 

 Home Depot argues that it was treated in a manner uniquely different from any other applicant and that Rye with
 
 *632
 
 held, its signature from the county permit in order to impede construction, despite having executed other contemporaneous applications within hours or days. There is no proof, however, that other entities were similarly situated to Home Depot—in terms of obtaining Rye’s signature on comparable permits—and received more favorable treatment. The other allegedly comparable situations—permits for road work by the New York State Thruway Authority, a curb cut, digging up pavement to install a domestic water service, closing the entrance of a driveway and installing a water service pipe—were not shown to be comparable to widening a county road for a traffic influx and thus do not support an equal protection claim.
 

 While Home Depot makes much of the City Manager’s testimony that this was the first permit the City Council reviewed in executive session, the requisite showing of improper motivation is lacking. Home Depot’s improper motivation claim more closely addresses the merits of the City’s decision than its constitutionality
 
 (Harlen,
 
 273 F3d at 502;
 
 Masi Mgt. v Town of Ogden,
 
 180 Misc 2d 881, 902 [Sup Ct, Monroe County 1999] [“The concept of equal protection is trivialized when it is used to subject every decision (claimed to be arbitrary and capricious in the sense contemplated by principles of State administrative law) to constitutional review by federal courts”],
 
 affd
 
 273 AD2d 837 [4th Dept 2000]). Even the community’s “political” opposition to the high-traffic superstore at the City’s border is not the equivalent of the “evil eye and an unequal hand” for constitutional equal protection purposes.
 

 Accordingly, in each case, the order of the Appellate Division should be affirmed, with costs.
 

 Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo and Read concur; Judge R.S. Smith taking no part.
 

 In each case: Order affirmed, with costs.
 

 [1]
 

 . After Poughkeepsie approved the subdivision, Pleasant Valley brought a CPLR article 78 proceeding to nullify that determination. While finding no standing to lodge the challenge, Supreme Court dismissed the petition, and the Appellate Division affirmed on the merits
 
 (see Town of Pleasant Val. v Town of Poughkeepsie Planning Bd.,
 
 289 AD2d 583 [2d Dept 2001]).
 

 [2]
 

 . Home Depot actually acquired a right to buy the site in 1992, hut was not obligated to conclude the purchase unless the seller had obtained the necessary land-use approvals; Home Depot nonetheless acquired title in March 1998, while issues remained unresolved.
 

 [3]
 

 . Port Chester declined to adopt the three other traffic mitigation measures Rye had requested. Rye and a local citizens group then brought an article 78 proceeding challenging Port Chester’s approval of the project. Supreme Court dismissed the petition, and the Appellate Division affirmed (see
 
 Matter of City of Rye v Korff,
 
 249 AD2d 470 [2d Dept 1998]).
 

 [4]
 

 .
 
 Matter of Home Depot USA, Inc. v City of Rye,
 
 Sup Ct, Westchester County, Feb. 2, 1998, Cowhey, J., Index No. 3486/97, at n 1 (as amended Feb. 6, 1998),
 
 affd
 
 259 AD2d 547 (2d Dept 1999).
 

 [5]
 

 . Home Depot’s motion followed an earlier attempt by Rye—prior to the close of discovery—to dismiss the section 1983 action for failure to state a cause of action and for dismissal because the action was a SLAPP (Strategic Lawsuit Against Public Participation) suit. In denying the motion, Supreme Court noted that “[t]he issue of building a Home Depot in Port Chester has generated extensive litigation between Port Chester and Rye over the past few years, as well as strong community opposition to the project by the citizens of Rye. Rye officials have adamantly opposed said project”
 
 (Home Depot U.S.A., Inc. v Dunn,
 
 Sup Ct., Westchester County, Feb. 17, 1998, Cowhey, J., Index No. 97/05316).
 

 [6]
 

 . We reject Home Depot’s argument that this Court should adopt the subjective standard spelled out in the dissenting opinion in
 
 RRI
 
 (870 F2d at 922 [Garth, J., dissenting]) and in certain decisions of the Third Circuit.
 

 [7]
 

 . Equal protection sometimes appears in the federal land-use case law as the subsidiary argument to due process; most often, both have been rejected. In the present case, Home Depot never even asserted an equal protection claim in its complaint. Defendants contend that the claim should be dismissed on this ground alone. However, we treat that cause of action as did the parties, the trial court and the Appellate Division, who addressed and resolved it.