[990 NYS2d 794]

In the Matter of STEPHEN T. SGUEGLIA, Petitioner, v RAYMOND KELLY, as the Statutorily Designated Firearms Licensing Officer and as the Police Commissioner of the City of New York, and His Successors in Office, Respondent.

Supreme Court, New York County, July 11, 2014

**APPEARANCES OF COUNSEL**

*John S. Chambers*, New York City, for petitioner.

*Zachary W. Carter, Corporation Counsel*, New York City (*Sheryl Neufeld* and *Michelle Goldberg-Cahn* of counsel), for respondent.

**OPINION OF THE COURT**

MICHAEL D. STALLMAN, J.

Petitioner Stephen T. Sgueglia brings this CPLR article 78 proceeding challenging respondent's determination allegedly

denying petitioner a target shooting endorsement for target shooting competitions and activities outside of New York City with petitioner's premises residence license.

Petitioner seeks an order: mandating that respondent grant petitioner permission to travel outside of New York City with his registered handgun, or in the alternative directing respondent to treat similarly situated hunters and non-hunters in an equal way, thus allowing a non-hunter to travel with his registered handgun outside of New York City.

## Background

In April 1982, petitioner submitted a pistol license application for a target license to the New York City Police Department (NYPD), Pistol License Division (PLD). (Verified answer, exhibit A; verified petition, exhibit A.) The target license, issued by respondent until 2001, permitted the transport of a registered handgun, unloaded, to and from an NYPD authorized shooting range or club for regular recreational target shooting purposes. (Verified petition ¶ 44.) The PLD granted petitioner's application and issued petitioner the target license on or around August 12, 1982. (Verified answer, exhibit A.) From 1982 until 2000, petitioner successfully renewed his target license nine times. (*Id.*, exhibit B.)

In 2001, due to alleged repeated abuses, respondent promulgated rules that eliminated the target license and converted existing target licenses into premises residence licenses. (*Id.* ¶ 49.) On June 18, 2001, the NYPD notified target license holders that, beginning June 30, 2001, all target licenses would be converted to premises residence licenses. (*Id.*, exhibit D.)

Petitioner submitted an application to renew his converted target license as a premises residence license, which was sworn to May 7, 2002. (*Id.*, exhibit E.) Petitioner submitted three more license renewal applications, the most recent of which was sworn to on May 31, 2011. (*Id.*) The PLD granted each of the renewal applications and issued petitioner a renewed premises residence license. (*Id.*)

By letter dated February 15, 2011, petitioner contacted the PLD, requesting which authorization and documentation he would need to obtain from respondent to legally participate in shooting competitions and trainings outside of New York City and around the United States. (Verified petition, exhibit B.) After allegedly receiving no response, petitioner again contacted the PLD requesting guidance, by letter dated April 22, 2011. (*Id.*, exhibit C.)

Petitioner claims that he then met with Deputy Inspector Andrew Lunetta, who informed petitioner that petitioner's license is a premises residence license and petitioner could not leave New York City with any of the handguns registered to this license. (*Id*. ¶ 5.)

Petitioner's counsel states that, in February 2013, he met with Thomas M. Prasso, the director of the PLD to discuss petitioner's license issue. (*Id*. ¶ 6.) By letter dated April 9, 2013, petitioner's counsel purportedly memorialized the conversation of the February 2013 meeting and hand delivered it to Prasso. (*Id*., exhibit E.) The letter stated in pertinent part,

> "As we discussed, the problem is that these licensees are hemmed in by the current offerings of a pistol license by the N.Y.P.D. And, they find themselves having to 'bend' the regulations in order to compete in the sport of competitive pistol shooting, or simply to enjoy the sport of handgun shooting with a brother, or other relative, who resides outside of the five boroughs.
>
> "At this juncture, the [PLD] offers a **single** type of license to the average City dweller who seeks a handgun for recreational shooting activities. This license is commonly referred to as a *'premises residence'* license[ ]. And, although the holder may go to a target range to remain proficient with his/her handgun, the [PLD] restricts the travel with a handgun held under this kind of license to the confines of New York City **only**.
>
> "Essentially, this type of license does not contemplate that **there are serious competitive shooters** amongst those who reside in the City of New York. Instead, this type of license is really geared towards someone who wants to keep a handgun in his/her home for self-protection. Thus, he or she is content with the restriction as to use of pistol ranges within the City limits. . . .
>
> "The [PLD] maintains that the recreational shooter, or competitive shooter cannot travel with his or her registered handgun outside of New York City due to the fact that the **premises residence** handgun license is restricted to 'place of possession.' This is . . . not completely accurate, since the PLD does allow travel to and from a NYC range. In addition, . . . the hunters in NYC who are licensed under

this 'place' oriented license can and do travel to any part of NYS with their licensed handgun(s) to pursue their passion for hunting, all with the [PLD's] blessing.

"Consequently, it can be called anything, but the reality is, it is not 100% place-based. And, does not require the holder ONLY to have the gun within his or her home. In addition to seeking a license, or endorsement, which will allow for travel upstate by pistol licensees with their registered handgun, we also seek a method by which a NYC licensee can travel to other parts of the country to engage in competitive shooting events and training. . . .

"Counsel respectfully suggests that these issues could be resolved in many different ways. Here are some suggestions:

"• Consider re-instituting the 'target' license, thereby giving the average law-abiding New Yorker a choice of pistol license for home defense, or one which will allow target shooting, and travel to places upstate, and out-of[-]state under a license not restricted in any manner by place of possession.

"• Consider issuing an 'endorsement' card for up-state travel for target shooting/competitive shooting (similar to the 'hunting' endorsement). In addition, institution of a mechanism by which a licensee can notify and obtain permission from the [PLD] when he or she desires to travel to the Nationals, or some other competition, or training course, outside of the State of New York.

"• Since travel out of NYC is already allowed with a NYC premises residence pistol license, institute a program by which a licensee can seek approval for either regular trips for shooting upstate at specific range/ranges, or for particular competitions/seminars/courses offered upstate or out of state. To be approved by the PLD on a case-by-case basis."
(*Id.*, exhibit E.)

After receiving this letter, Prasso allegedly informed petitioner's counsel that the "issue was being 'looked into by upstairs.' " (*Id.* ¶ 8.) On July 11, 2013, Prasso allegedly informed petitioner's counsel that the PLD would take "no action on the suggestions and requests made by [c]ounsel in his letter of April 9, 2013." (*Id.* ¶ 9.)

On October 18, 2013, petitioner commenced this proceeding.

▉▉▉▉▉▉▉▉▉▉▉▉

## Discussion

Petitioner argues that respondent's determination denying petitioner a target shooting endorsement for target shooting competitions and activities outside of New York City with petitioner's premises residence license is arbitrary and capricious and violates petitioner's right to equal protection of the laws. (US Const, 14th Amend, § 1; NY Const, art I, § 11.) Respondent argues that the petition should be dismissed because respondent's rules regarding the premises residence license are reasonable and rational and do not violate petitioner's right to equal protection.

## I.

"In reviewing administrative proceedings in general," courts are "limited to considering 'whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion.' " (*Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359, 363 [1986], quoting CPLR 7803 [3].) "[T]he proper test is whether there is a rational basis for the administrative orders . . . . Rationality is what is reviewed under . . . the arbitrary and capricious standard." (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974].)

▉ Here, respondent's rules regarding the restrictions on the premises residence license were rationally and reasonably promulgated to promote the compelling interest of public safety by reducing the number of firearms carried in public. (*See de Illy v Kelly*, 6 AD3d 217, 218 [1st Dept 2004] [holding that "respondent's authority to replace the category of firearm target license with a premises license with target-shooting endorsement" was properly dismissed since "(r)espondent neither exceeded his jurisdiction nor violated state law in promulgating these new licensing regulations and procedures" (citations omitted)]; *see also Matter of Murad v City of New York*, 12 AD3d 193, 193 [1st Dept 2004] [holding that "(t)he Police Commissioner's revision of the handgun licensing regulations, which eliminated the special category of permits for transporting a gun to a target range, was neither arbitrary nor capricious, and was a rational and proper exercise of authority" (citations omitted)].)

Petitioner has not demonstrated that he was aggrieved by not being granted the endorsement he seeks. Petitioner cannot be

aggrieved by not getting something to which he is not legally entitled. (*See de Illy*, 6 AD3d at 218 ["petitioner (did) not demonstrate( ) how he (was) aggrieved by the local rule . . ."].)*

■ As to petitioner's equal protection argument, in order to state an equal protection claim, petitioner must establish that he, compared with others similarly situated, was selectively treated, and that such treatment was intentionally based on an impermissible consideration—membership in a suspect class and/or a violation of a fundamental right—or malicious or bad faith desire to injure a person. (*See Kadrmas v Dickinson Public Schools*, 487 US 450, 457-458 [1988]; *Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 630-631 [2004].) Respondent permits premises residence licensees with a hunting license to travel outside of New York City for hunting activities, as opposed to target shooting activities, because hunting is a highly regulated licensed activity, and law enforcement throughout New York State are familiar with its many rules and requirements. This distinction does not demonstrate that those interested in target shooting activities are members of a suspect class. Petitioner has not established that respondent promulgated these rules with purposeful, malicious intent to injure petitioner or others interested in target shooting. (*See Kadrmas*, 487 US at 457-458; *Bower Assoc.*, 2 NY3d at 630-631.) Petitioner has not shown that he was selectively treated differently from anyone else similarly situated.

Petitioner does not claim a violation of the Second Amendment to the United States Constitution. However, petitioner's challenge implicates the Second Amendment and its jurisprudence, which considers the right to bear arms as a fundamental right. (*District of Columbia v Heller*, 554 US 570, 595 [2008].) The Second Circuit has held that "heightened scrutiny is triggered only by those restrictions that . . . operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense." (*Kachalsky v County of Westchester*, 701 F3d 81, 93 [2d Cir 2012].) Assuming that the City of New York's "ability to regulate firearms is circumscribed in the home" because "outside the home, firearm rights have always

* Petitioner may not use this proceeding to challenge a 2001 determination to eliminate the target license and convert it to a premises residence license. If petitioner believed himself thereby aggrieved, his claim would have accrued at that time. Petitioner, by applying for renewal of the converted license as a premises residence license and obtaining three further renewals thereafter, obtained the benefit of the new license and assented to its terms.

been more limited, because public safety interests often outweigh individual interests in self-defense" (*id.* at 94 [internal quotation marks and citation omitted]), intermediate scrutiny would be appropriate in this case. (*Id.* at 96 [applying intermediate scrutiny].) The City has a substantial governmental interest in licensing firearms to promote public safety and control crime. The City's restriction on target shooting with a premises residence license is substantially related to these interests. Even applying such intermediate scrutiny to petitioner's circumstances, it is clear that respondent has not violated petitioner's right to equal protection. Simply put, petitioner's equal protection claim is specious. A target shooter is not a hunter. The City's substantial interest in controlling the use and possession of licensed premises weapons outside of the designated premises is substantially related to the distinction the City has drawn between hunters and target shooters.

## II.

 Viewed from a different perspective, petitioner appears to complain because respondent did not follow his suggestion that the licensing law and rules be changed so as to issue him a type of license that does not currently exist. Petitioner did not even apply for a license which was denied. He and his attorney purportedly met with the PLD to discuss whether it would be possible for petitioner to travel outside of New York City with handguns registered to a premises residence license, and the PLD allegedly stated that this was not possible. Indeed, whether or not the law and rules should be changed as petitioner urges, is entirely a matter of public policy. Neither respondent nor this court has the discretion to alter the law as it exists. While respondent has the discretion to consider making changes in its own rules, petitioner does not demonstrate a basis for this court to compel such a reexamination. Petitioner's challenge raises a political question and is therefore not justiciable.

## Conclusion

Accordingly, it is hereby adjudged that the petition is denied and the proceeding is dismissed.