Matter of Riedman Acquisitions, LLC v Town Bd. of Town of Mendon (2021 NY Slip Op 02952)





Matter of Riedman Acquisitions, LLC v Town Bd. of Town of Mendon


2021 NY Slip Op 02952


Decided on May 7, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., CURRAN, WINSLOW, AND DEJOSEPH, JJ.


1003 CA 19-02293

[*1]IN THE MATTER OF RIEDMAN ACQUISITIONS, LLC AND RYAN HOMES, INC., PETITIONERS-PLAINTIFFS-RESPONDENTS,
v
TOWN BOARD OF TOWN OF MENDON, RESPONDENT-DEFENDANT-APPELLANT. (APPEAL NO. 1.) 






SHELDON W. BOYCE, JR., TOWN ATTORNEY, ROCHESTER (DAVID C. SIELING OF COUNSEL), FOR RESPONDENT-DEFENDANT-APPELLANT. 
FORSYTH, HOWE, O'DWYER, KALB & MURPHY, P.C., ROCHESTER (ROBERT B. KOEGEL OF COUNSEL), FOR PETITIONERS-PLAINTIFFS-RESPONDENTS. 


 Appeal from a judgment (denominated order and judgment) of the Supreme Court, Monroe County (J. Scott Odorisi, J.), entered July 9, 2019 in a proceeding pursuant to CPLR article 78 and declaratory judgment action. The judgment, among other things, granted in part the petition-complaint. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by denying those parts of the petition-complaint seeking attorneys' fees and seeking to compel respondent-defendant to execute the new Sewer Transmission Agreement and Maintenance Contract, and granting judgment in favor of petitioners-plaintiffs as follows:
It is ADJUDGED AND DECLARED that the Sewer Transmission Agreement and Maintenance Contract, executed September 22, 2006, was not properly voided by respondent-defendant and remains in full force and effect,
and as modified the judgment is affirmed without costs.
Memorandum: This case centers on the proposed development of a patio home community (project) on an 87-acre parcel of land (parcel) in the Town of Mendon (Town). Development of the project commenced in 2004 when petitioner-plaintiff Ryan Homes, Inc. (Ryan), which then owned the parcel, submitted a series of conceptual sketch plans to the Town of Mendon Planning Board (Planning Board). The project would ultimately have to be approved by respondent-defendant Town Board of Town of Mendon (Town Board) before it could go forward.
Because the project would result in higher density development, Ryan also needed to have a majority of the parcel's 87 acres rezoned from Residential Agricultural-5 Acres (RA-5) to planned unit development (PUD) under Code of the Town of Mendon (Town Code) former § 200-17. In November 2004, a simple majority of the Town Board voted in favor of rezoning the parcel for PUD. The Town Board thought that, under Town Law § 265, a supermajority was required to approve the rezoning, and therefore it concluded that the rezoning resolution had been defeated. Ryan commenced a hybrid CPLR article 78 proceeding and declaratory judgment action seeking, inter alia, to compel the Town Board to rezone the parcel for PUD. Supreme Court (Lunn, J.) granted the petition, concluding that only a simple majority was required to approve the rezoning resolution (Ryan Homes, Inc. v Town Bd. of Town of Mendon, 7 Misc 3d 709, 712-714 [Sup Ct, Monroe County 2005]). Thereafter, the Town Board rezoned the parcel [*2]for PUD, through enactment of Local Law No. 10 of 2004 (Local Law No. 10).
In December 2005, the Planning Board approved the project's preliminary site plan. In September 2006, the Town and the Town of Pittsford entered into a Sewer Transmission Agreement and Maintenance Contract (2006 Sewer Agreement), which would connect the project to the Town of Pittsford's sewer system—a condition necessary to obtain final approval of the project. The 2006 Sewer Agreement was to "continue in full force and effect for [40] years," and could only be "changed, modified or amended" in writing by the parties' mutual assent. In February 2011, the Planning Board granted final approval of Phase I of the project, with a provision that Ryan's failure to abide by certain conditions would cause the final approval to expire. In April 2015, after obtaining several extensions of time to satisfy the conditions, Ryan announced that it would not proceed on the project due to its economic unfeasibility.
In December 2017, petitioner-plaintiff Riedman Acquisitions, LLC (Riedman) purchased the parcel from Ryan with the intent to revive the project and make it more economically feasible. Ryan retained a reversion interest in the property that would vest if Riedman failed to obtain development approvals. Ryan and Riedman (petitioners) had already contacted the Town Board and the Planning Board for confirmation of their belief that the parcel remained zoned for PUD and that revisions to the project would be submitted for approval under former Town Code § 200-17 (G), which governed requests for changes to sketch plans.
Meanwhile, the Town Board, by means of a letter from the Town of Mendon Supervisor, unilaterally declared the 2006 Sewer Agreement null and void, and asked petitioners for a new agreement. Petitioners, the Town Board, and the Town of Pittsford thereafter attempted to negotiate terms for a new agreement (2018 Sewer Agreement). In June 2018, the Planning Board issued to the Town Board a favorable report on petitioners' revised sketch plan application (revised application), which was conditioned on approval of a sewer agreement. At a meeting one month later, however, the Town Board concluded that the parcel's zoning had reverted to RA-5 because the PUD zoning had been conditioned on the completion of the final approval process, which had expired in 2015.
Petitioners submitted to the Town Board a letter in which they objected to the Town Board's conclusion that the zoning had reverted to RA-5, noting that Local Law No. 10 unconditionally rezoned the parcel to PUD, and that petitioners were never warned about the possibility of an automatic reversion. They also requested that the Town Board approve the 2018 Sewer Agreement. In August 2018, the Town Board recodified the Town Code to remove PUD zoning. In January 2019, the Town Board voted against the 2018 Sewer Agreement. It took no further action on the project's revised application.
Petitioners commenced the underlying hybrid CPLR article 78 proceeding and declaratory judgment action challenging, inter alia, the Town Board's failure to consent to the revised application, the recodification of the Town Code to eliminate PUD zoning, the Town Board's termination of the 2006 Sewer Agreement and its failure to approve the 2018 Sewer Agreement, and the determination that the parcel was no longer zoned for PUD. Petitioners also sought damages and attorneys' fees under 42 USC §§ 1983 and 1988 based on alleged due process and equal protection violations.
In appeal No. 1, the Town Board appeals from a judgment that granted the petition-complaint (petition) in part and, inter alia, declared that the parcel remained zoned for PUD and did not automatically revert to RA-5, annulled the Town Board's recodification of the Town Code, directed the Town Board to review petitioners' revised application for the project under the zoning code as it existed at the time the revised application was submitted, vacated the Town Board's rejection of the 2018 Sewer Agreement as arbitrary and capricious, determined that the Town Board had improperly terminated the 2006 Sewer Agreement, estopped it from voting down the 2018 Sewer Agreement, and granted petitioners' request for attorneys' fees. In appeal No. 2, the Town Board appeals from a supplemental judgment that, insofar as appealed from, awarded petitioners $41,090 in attorneys' fees.
Initially, we reject the Town Board's contention that the parcel's zoning automatically reverted to RA-5 when Ryan stopped moving forward on the original project, and instead we conclude that it has remained, at all times, zoned for PUD. Zoning regulations must be strictly [*3]construed against the municipality that enacted and seeks to enforce them, and any ambiguity must be resolved in favor of the property owner (see Matter of Allen v Adami, 39 NY2d 275, 277 [1976]; Matter of Lodge Hotel, Inc. v Town of Erwin Planning Bd., 62 AD3d 1257, 1258 [4th Dept 2009]; AHEPA 91 v Town of Lancaster, 237 AD2d 978, 979 [4th Dept 1997]). Nonetheless, "where . . . 'the language of a[n] [ordinance] is clear and unambiguous, courts must give effect to its plain meaning' " (Matter of Fox v Town of Geneva Zoning Bd. of Appeals, 176 AD3d 1576, 1578 [4th Dept 2019]).
For a zoned parcel to automatically revert to a prior designation, such a possibility must "be clearly set forth in [the] language of the zoning instrument" (Matter of D'Angelo v Di Bernardo, 106 Misc 2d 735, 737 [Sup Ct, Niagara County 1980], affd 79 AD2d 1092 [4th Dept 1981], lv denied 53 NY2d 606 [1981]). Furthermore, "even where the automatic reversion language is clear a notice and public hearing must take place before the reversion is permitted to be confirmed by the legislative body" (id.). In determining whether the zoning instruments contain the requisite clear language creating automatic reversion, the " 'ordinance is to be construed as a whole, reading all of its parts together to determine the legislative intent and to avoid rendering any of its language superfluous' " (Fox, 176 AD3d at 1578).
Here, we conclude that the parcel's zoning never automatically reverted from PUD to RA-5 because, strictly construed against the Town Board, the relevant zoning instruments did not contain any express language warning petitioners that the PUD zone would automatically revert if certain conditions were not met (see Allen, 39 NY2d at 277; D'Angelo, 106 Misc 2d at 737). Neither the rezoning ordinance passed by the Town Board that rezoned the parcel from RA-5 to PUD, nor Local Law No. 10—which effectuated the change in the parcel's zoning to PUD on the zoning map—contained any express language mentioning the possibility that the zoning could automatically revert (see D'Angelo, 106 Misc 2d at 737). Thus, inasmuch as petitioners were not sufficiently placed on notice of that possibility, we conclude that Supreme Court (Odorisi, J.) properly determined that the parcel remains zoned for PUD.
We also conclude that the court properly granted that part of the petition seeking to compel the Town Board to review petitioners' revised application because that ministerial act is "mandatory, not discretionary" and petitioners had "a clear legal right to the relief sought" (Matter of Shaw v King, 123 AD3d 1317, 1318-1319 [3d Dept 2014] [internal quotation marks omitted]; see generally CPLR 7803 [1]; Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 757 [1991]; Matter of De Milio v Borghard, 55 NY2d 216, 220 [1982]; Matter of van Tol v City of Buffalo, 107 AD3d 1626, 1627 [4th Dept 2013]). Whether the Town Board was required to review petitioners' revised application hinges on the proper interpretation of former Town Code § 200-17 (G). Former Town Code § 200-17 (G) provided, in relevant part, that "[i]f, in the site plan development, it becomes apparent that certain elements of the sketch plan . . . are unfeasible and in need of significant modification, the applicant shall then present a proposed solution to the Planning board as the preliminary site plan." After a proposed solution is approved by the Planning Board, it "shall so notify the Town Board," at which point "[p]reliminary site plan approval may then be given only with the consent of the Town Board." In interpreting that provision, we note that "[a]ny ambiguity in the language . . . must be resolved in favor of the property owner" (Allen, 39 NY2d at 277; see AHEPA 91, 237 AD2d at 979).
The Town Board contends that it was not required to review the revised application because petitioners did not submit it to the Town Board in the form of a preliminary site plan, but rather as a sketch plan. Petitioners argue that the Town Board's interpretation is incorrect, and that the Town Board was required to review the revised application once the Planning Board issued a favorable report. In our view, former Town Code § 200-17 (G) is ambiguous with respect to the proper procedure. Nonetheless, resolving the ambiguity in favor of the property owners, we conclude that, under former section 200-17 (G), the revised application submitted to the Planning Board effectively served as a preliminary site plan and, once the Planning Board issued a favorable report, the Town Board was obligated to review the revised application for approval, and petitioners were not required to submit a whole new preliminary site plan for review. Thus, we conclude that the Town Board had a clear, nondiscretionary obligation to consider the favorable report and revised application (see generally CPLR 7803 [1]; Shaw, 123 AD3d at 1318-1319).
To the extent the Town Board contends that petitioners should have complied with the [*4]procedure of former Town Code § 200-17 (J) in submitting the revised application, we conclude that the Town Board is estopped from denying that former Town Code § 200-17 (G) applies because of its complete failure to dispel petitioners' reasonable belief that former section 200-17 (G) governed consideration of the revised application (see generally Bender v New York City Health & Hosps. Corp., 38 NY2d 662, 668 [1976]; Notaro v Power Auth. of State of N.Y., 41 AD3d 1318, 1319-1320 [4th Dept 2007], lv dismissed 9 NY3d 935 [2007]; Landmark Colony at Oyster Bay v Board of Supervisors of County of Nassau, 113 AD2d 741, 742-743 [2d Dept 1985]). The Town Board's remaining arguments against being compelled to consider the revised application are improperly raised for the first time on appeal (see Ciesinski v Town of Aurora, 202 AD2d 984, 985 [4th Dept 1994]; see also Olney v Town of Barrington, 180 AD3d 1364, 1365 [4th Dept 2020]).
We agree with the Town Board, however, to the extent it contends that the court erred in granting that part of the petition seeking to compel the Town Board to approve the 2018 Sewer Agreement, and we therefore modify the judgment in appeal No. 1 accordingly. Town Law
§ 64 (6) provides that a town board has the general power to "award contracts for any of the purposes authorized by law and the same shall be executed by the supervisor in the name of the town after approval by the town board." As a corollary, a town supervisor or town attorney does not possess the authority to execute or authorize a contract on the town's behalf without the approval of the town board (see Matter of Municipal Consultants & Publs. v Town of Ramapo, 47 NY2d 144, 150 [1979]). Thus, the Town Board is not estopped from voting down the 2018 Sewer Agreement merely because its representatives were involved in negotiating the agreement's proposed terms—those representatives lacked lawful authority to bind the Town Board (see City of Zanesville, Ohio v Mohawk Data Sciences Corp., 97 AD2d 64, 67 [4th Dept 1983]).
We further conclude that the Town Board's decision not to approve the 2018 Sewer Agreement was an exercise of its legislative power under Town Law § 64 (6), not an administrative decision (see generally Klostermann v Cuomo, 61 NY2d 525, 541 [1984]). We may nonetheless review the validity of the Town Board's legislative determination not to approve the 2018 Sewer Agreement because petitioners sought a declaration to that effect (see generally Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400, 407 [1969]; Todd Mart v Town Bd. of Town of Webster, 49 AD2d 12, 16-17 [4th Dept 1975]). In evaluating the validity of the Town Board's determination, we look to whether declining to approve the 2018 Sewer Agreement was arbitrary and capricious (see Dauernheim, Inc. v Town Bd. of Town of Hempstead, 33 NY2d 468, 474 [1974]; Todd Mart, 49 AD2d at 17; see generally Cimato Bros. v Town of Pendleton, 237 AD2d 883, 884 [4th Dept 1997]). Here, it was not arbitrary and capricious for the Town Board to decline to approve the 2018 Sewer Agreement because, in light of its general power to execute and award contracts on behalf of the Town, the Town Board could decide that it did not want to purchase sewer services from a neighboring town (see generally Matter of Caiola v Town of Ossining, 272 AD2d 324, 324-325 [2d Dept 2000], lv denied 95 NY2d 761 [2000]; Fraccola v City of Utica Bd. of Water Supply, 70 AD2d 768, 769 [4th Dept 1979]). The cases relied on by petitioners are inapposite because they involved applications requesting that a municipality establish or extend a sewer district under Town Law § 190—not the determination whether to execute a contract with another municipality under Town Law § 64 (6) (cf. Matter of Svenningsen v Passidomo, 62 NY2d 967, 969 [1984]; Town of Lima v Harper, 55 AD2d 405, 411 [4th Dept 1977], affd 43 NY2d 980 [1978]; Matter of Clubside, Inc. v Town Bd., Town of Wallkill, 297 AD2d 734, 735 [2d Dept 2002]). Indeed, we note that "[o]rdinarily, the failure of a legislative body to exercise its powers is not subject to review in the courts" (Harper, 55 AD2d at 411 [emphasis added]).
Nevertheless, we further conclude that the court properly determined that the Town Board unlawfully voided the 2006 Sewer Agreement, and that said agreement remains in effect. "[C]lear, complete writings should . . . be enforced according to their terms" (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 160 [1990]). Thus, "[w]here the language of a contract is clear and unambiguous, interpretation of that contract and construction of its provisions are questions of law" (Kula v State Farm Fire & Cas. Co., 212 AD2d 16, 19 [4th Dept 1995], lv dismissed in part and denied in part 87 NY2d 953 [1996]; see W.W.W. Assoc., 77 NY2d at 162). To that end, "[t]he court must ascertain the intent of the parties from the plain meaning of the language employed, giving the terms their plain, ordinary, popular and nontechnical meanings" (Kula, 212 AD2d at 19).
Here, the 2006 Sewer Agreement clearly and unambiguously provided that it "shall continue in full force and effect for [40] years from the date [of execution] and, during said period, . . . shall not be changed, modified or amended except by a writing duly made, executed and acknowledged by the parties or their successors in interest." Thus, the 2006 Sewer Agreement could only be cancelled or voided if both parties, i.e., the Town and the Town of Pittsford, agreed to do so in writing. Here, the record establishes that only the Town, unilaterally, cancelled the agreement through a letter from the town supervisor, and there is nothing establishing that the Town of Pittsford also agreed to its cancellation. Thus, because the Town Board did not comply with the clear and unambiguous terms of the 2006 Sewer Agreement in attempting to terminate that agreement, we conclude that the 2006 Sewer Agreement has, at all relevant times, remained in effect and allows the project to be connected to the Town of Pittsford's sewer system. We reject the Town Board's contention that petitioners did not seek reinstatement of the 2006 Sewer Agreement inasmuch as petitioners specifically sought such a determination in the petition. We note, however, that the court did not declare the rights of the parties with respect to the 2006 Sewer Agreement, and consequently, we further modify the judgment in appeal No. 1 by issuing a declaration that the 2006 Sewer Agreement was not properly voided by the Town and remains in full force and effect.
The Town Board also contends that the court erred in granting petitioners' request for attorneys' fees under 42 USC § 1988 based on alleged substantive due process and equal protection violations under 42 USC § 1983. We agree, and we therefore further modify the judgment in appeal No. 1 accordingly and we reverse the supplemental judgment in appeal No. 2 insofar as appealed from. "[A]ttorney's fees are available under [42 USC § ] 1988 where relief is sought on both State and Federal grounds, but nevertheless awarded on State grounds only. In such a case, if a constitutional question is involved, fees may be awarded if the constitutional claim is substantial and arises out of a common nucleus of operative fact as the State claim" (Matter of Giaquinto v Commissioner of N.Y. State Dept. of Health, 11 NY3d 179, 191 [2008] [internal quotation marks omitted]; see Matter of Thomasel v Perales, 78 NY2d 561, 568 [1991]). A constitutional claim is insubstantial "only if its unsoundness so clearly results from the previous decisions of [the courts] as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy" (Hagans v Lavine, 415 US 528, 538 [1974] [internal quotation marks omitted]; see Ex parte Poresky, 290 US 30, 32 [1933], reh denied 366 US 922 [1961]; Cerberus Props., LLC v Kirkmire, 121 AD3d 1556, 1558 [4th Dept 2014]; see generally Matter of Johnson v Blum, 58 NY2d 454, 458 [1983]).
We conclude that petitioners were not entitled to attorneys' fees because their federal due process and equal protection claims were insubstantial. "In the land-use context, 42 USC § 1983 protects against municipal actions that violate a property owner's right to due process, equal protection of the laws and just compensation for the taking of property under the Fifth and Fourteenth Amendments to the United States Constitution" (Bower Assoc. v Town of Pleasant Val., 2 NY3d 617, 626 [2004]; see Schlossin v Town of Marilla, 48 AD3d 1118, 1120 [4th Dept 2008]). The Court of Appeals has set forth a two-part test for substantive due process violations. First, petitioners "must establish a cognizable property interest, meaning a vested property interest, or more than a mere expectation or hope to [obtain approval of their application]; they must show that pursuant to State or local law, they had a legitimate claim of entitlement to [obtain such approval]" (Schlossin, 48 AD3d at 1120 [internal quotation marks omitted]; see Bower Assoc., 2 NY3d at 627; Acquest Wehrle, LLC v Town of Amherst, 129 AD3d 1644, 1647 [4th Dept 2015], appeal dismissed 26 NY3d 1020 [2015]). Second, petitioners "must show that the governmental action was wholly without legal justification" (Acquest Wehrle, LLC, 129 AD3d at 1647 [internal quotation marks omitted]; see Bower Assoc., 2 NY3d at 627).
Here, the court erred in granting petitioners' request for attorneys' fees because they did not show that "there is either a 'certainty or a very strong likelihood' that an application for approval would have been granted" (Bower Assoc., 2 NY3d at 628, quoting Harlen Assoc. v Incorporated Vil. of Mineola, 273 F3d 494, 504 [2d Cir 2001]; see RRI Realty Corp. v Incorporated Vil. of Southampton, 870 F2d 911, 918 [2d Cir 1989], cert denied 493 US 893 [1989]). Specifically, we conclude that, because the Town Board retained significant discretion in ultimately approving or denying the revised application, petitioners did not have a clear entitlement to approval of the revised application—in short, approval of the revised application was not " 'virtually assured' " (Bower Assoc., 2 NY3d at 628; see East End Resources, LLC v [*5]Town of Southold Planning Bd., 135 AD3d 899, 901-902 [2d Dept 2016]; see generally Clubside, Inc. v Valentin, 468 F3d 144, 153-154 [2d Cir 2006]). Thus, it is unnecessary for us to consider whether, under the second prong, the Town Board acted "wholly without legal justification" (Bower Assoc., 2 NY3d at 627).
We also conclude that petitioners did not establish that they had a substantial equal protection claim. "[A] violation of equal protection arises where first, a person (compared with other similarly situated) is selectively treated and second, such treatment is based on impermissible considerations such as[, inter alia,] malicious or bad faith intent to injure a person" (id. at 631; see Clubside, Inc., 468 F3d at 158-159; Harlen Assoc., 273 F3d at 499). Here, petitioners did not establish that the parcel, and development thereon, was similarly situated to any other property in the Town. Petitioners' generic assertions to the contrary were insufficient to substantiate the equal protection claim (see generally Clubside, Inc., 468 F3d at 159). Consequently, because petitioners' underlying claims for due process and equal protection violations were " 'wholly insubstantial' " (Johnson, 58 NY2d at 458 n 2), we conclude that the court erred in awarding them attorneys' fees under 42 USC § 1988.
Because the Town Board has not raised any contentions on appeal challenging that part of the judgment in appeal No. 1 that annulled the recodification of the Town Code to remove PUD zoning and, on the record before us, PUD zoning is currently permitted by the Town Code, the Town Board's contention that the court erred in determining that the revised application should be reviewed under the Town Code as it existed before the recodification is academic.
Entered: May 7, 2021
Mark W. Bennett
Clerk of the Court